IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RECKITT BENCKISER              )
PHARMACEUTICALS INC., RB       )
PHARMACEUTICALS LIMITED, and   )
MONOSOL RX, LLC,               )
                               )
    Plaintiffs,        ) CA NO. 13-1461-RGA
                               )
v.                             )
                               )
PAR PHARMACEUTICAL, INC.,      )
INTELGENX TECHNOLOGIES CORP.,  )
and LTS LOHMANN THERAPY        )
SYSTEMS CORP.,                 )
                               )
    Defendants.        )
-------------------------------------------------------

RECKITT BENCKISER              )
PHARMACEUTICALS INC., RB       )
PHARMACEUTICALS LIMITED, and   )
MONOSOL RX, LLC                )
                               )
    Plaintiffs,        ) CA NO. 13-1674-RGA
                               )
v.                             )
                               )
WATSON LABORATORIES, INC.,     )
and ACTAVIS INC.,              )
                               )
    Defendants.        )
-------------------------------------------------------

RECKITT BENCKISER              )
PHARMACEUTICALS INC., RB       )
PHARMACEUTICALS LIMITED, and   )
MONOSOL RX, LLC                )
                               )
    Plaintiffs,        ) CA NO. 13-2003-RGA
                               )
v.                             )
                               )
ALVOGEN PINE BROOK, INC., and  )
ALVOGEN GROUP, INC.,           )
                               )
    Defendants.        )

Discovery Dispute before JUDGE RICHARD G. ANDREWS at 11:06 a.m., on Monday, April 7, 2014, at 844 North King Street, Wilmington, Delaware.

APPEARANCES:

WOMBLE CARLYLE
BY:  DANA K. SEVERANCE, ESQ.
 Counsel for the Plaintiffs

STEPTOE & JOHNSON LLP
BY:  JAMES F. HIBEY, ESQ.
BY:  TIMOTHY C. BICKHAM, ESQ.
 Counsel for MonoSol Rx, LLC

TROUTMAN SANDERS
BY:  DANIEL A. LADOW, ESQ.
 Counsel for Reckitt Benckiser
 Pharmaceuticals Inc.

RICHARDS LAYTON & FINGER
BY:  STEVEN J. FINEMAN, ESQ.

          -and-

LATHAM & WATKINS LLP
BY:  JAMES K. LYNCH, ESQ.
 Counsel for Par Pharmaceutical, Inc.
 and IntelGenX Technologies Corp.

SHAW KELLER LLP
BY:  JEFFREY T. CASTELLANO, ESQ.

          -and-

LEYDIG, VOIT & MAYER, LTD.
BY:  STEVEN H. SKLAR, ESQ.
 Counsel for Alvogen

WINSTON & STRAWN LLP
BY:  DAVID P. DALKE, PH.D., J.D.

          -and-

PHILLIPS, GOLDMAN & SPENCE
BY:  MEGAN C. HANEY, ESQ.
 Counsel for Watson Laboratories, Inc.

1               THE COURT:  These are three cases,

2     the first of which is Reckitt Benckiser

3     Pharmaceuticals vs. Par Pharmaceutical, Civil

4     Action Number 13-1461.  Who's Ms. Severance.

5               MS. SEVERANCE:  That would be me.

6               THE COURT:  All right.  So who have

7     you got with you here?

8               MS. SEVERANCE:  I have Jim Hibey

9     and Tim Bickham from Steptoe & Johnson on behalf

10    of MonoSol, and closest to you is Dan Ladow from

11    Troutman Sanders on behalf of Reckitt.

12              THE COURT:  All right.  And

13    Mr. Fineman?

14              MR. FINEMAN:  Good morning, Your

15    Honor.  Steve Fineman on behalf of Par and

16    IntelGenX.  And Your Honor may recall Jim Lynch

17    from Latham & Watkins, who I have with me.

18              THE COURT:  All right.  Good

19    morning.  And Mr. Castellano?

20              MR. CASTELLANO:  Good morning, Your

21    Honor.  Jeff Castellano for Alvogen Pine Brook,

22    and this is Steven Sklar right here from Leydig,

23    Voit & Mayer.

24              THE COURT:  All right.  Ms. Haney?

1          MS. HANEY:  Good morning, Your

2    Honor.  Megan Haney from Phillips, Goldman &

3    Spence.  And this is David Dalke; he is from

4    Winston & Strawn.

5          THE COURT:  All right.  So I guess

6    there are three little disputes here.  Why don't

7    we take care of the FDA bar first.  I take it

8    two of the three defendants, Par and Watson --

9    who wants to speak for no more than one minute

10   on this topic?

11         MR. LYNCH:  Your Honor, on behalf

12   of Par, James Lynch, Latham & Watkins.  Thank

13   you.  I'm not even sure it would require a

14   minute.  I do think the papers cover the topic.

15         THE COURT:  Okay.  You don't have

16   to take the full minute.

17         MR. LYNCH:  If Your Honor has

18   questions, I'm happy to address them, but I

19   think that it's very well presented.

20         THE COURT:  All right.  Well, does

21   anybody want to say anything on behalf of the

22   plaintiffs?

23         MR. LADOW:  Your Honor, we also

24   think it's covered in the papers, but I would

1    say that you have to have no faith in the

2    enforceability of the protective order in order

3    to actually be in favor of this clause.  Because

4    we already have a clause, as our letters point

5    out, saying that you can't use confidential

6    information in communicating with -- you can't

7    use confidential information from the case for

8    purposes other than the case.

9              And that provision already protects

10   against using confidential information in such

11   things as citizen's petitions, et cetera.  And

12   that's one of the reasons why plaintiffs think

13   it's unnecessary.

14             THE COURT:  All right.  Well, I

15   think there's agreement in the letters that

16   there's good cause for issuance of the

17   protective order as a whole.  The parties

18   seeking the FDA bar, which here is Par and

19   Watson, have a burden to show good cause to

20   obtain it.

21             Quoting liberally from the Federal

22   Circuit, The party seeking the imposition of the

23   FDA bar must show the information designated to

24   trigger the bar and the scope of activities

1   prohibited by the bar, the duration of the bar

2   and the subject matter covered by the bar

3   reasonably reflect the risk presented by the

4   disclosure of proprietary competitive

5   information.

6            I don't think Par and Watson have

7   shown good cause.  Two of the three bar areas

8   that are in the docket, Item 70, Exhibit 1,

9   Paragraph 6.4, are grossly overbroad.  I note

10  that there's been some retreat from the breadth

11  in their reply letter, CI-74, Page 3.  But at

12  the time, the suggested narrowly-crafted bar was

13  in discussion between the parties, not in the

14  letters to me.

15           This is, of course, done against

16  the background of Section 14.1.  Plaintiff just

17  mentioned it already prohibits the use of any

18  confidential information in any challenge

19  involving the FDA.  The proposed bar, unlike the

20  patent prosecution, the bar that's right above

21  it doesn't appear to contain a durational limit.

22           In any event, I do not believe

23  that the proposed FDA bar reasonably reflects

24  the risk presented by the disclosure of

1  proprietary competitive information, which also

2  seems to have been Judge Robinson's conclusion

3  in *Eurand vs. Mylan*, Number 08-889 SLR, which is

4  in Docket Item -- in that case was Docket Item

5  71 in Paragraph 2, which is also Exhibit 2 to

6  Docket Item 70 here.

7          All right.  So let's go on to the

8  question about in-house counsel.  And let me see

9  if I have this essentially straight because the

10  parties letters and their attachments, you know,

11  on the one hand, the defendants just presented a

12  clean copy of the proposed protective order, and

13  the plaintiffs presented one with all kinds of

14  markups and parenthetical notes.

15          And it seemed to me -- and I saw

16  references to four levels of confidentiality,

17  even though I actually only saw three.  But it

18  seemed to me that basically the question was, or

19  might be looked at more concretely, is whether

20  the designated in-house counsel for I guess the

21  two defendants other than Watson, it seemed like

22  the things that were listed were access to New

23  Drug Application 22-410, which I assume is the

24  new drug application for whatever Reckitt

1    Benckiser's branded product is; is that right?

2              MR. LADOW:  Yes.

3              THE COURT:  Right.  Okay.  The

4    ANDAs and the three related actions; nonpublic

5    correspondence with the FDA presumably relating

6    to the ANDAs, maybe the NDA; the products

7    presently in development are undergoing FDA

8    approval or future products that are not the

9    subject of the three ANDAs; products presently

10   in development are undergoing FDA approval or

11   future products; and patent applications that

12   are not yet published; and highly-sensitive

13   financial information.

14              And this is what I was thinking.

15   It seemed to me that in-house counsel -- well,

16   it seemed like the parties sort of maybe thought

17   that highly-sensitive financial information, or

18   at least some of the parties, was in a slightly

19   different category.  But when I looked at this,

20   it seemed to me that in-house counsel -- and

21   that's presumably the two counsel who submitted

22   declarations, and if I went this way I guess

23   Watson could sign on, too.  But they seem to me

24   that the in-house counsel ought to have access

1    to the New Drug Application 22-410.  They ought

2    to have access to the ANDAs and the three

3    related actions, and they ought to have access

4    to the nonpublic correspondence with the FDA

5    that presumably either relate to the new drug

6    application or the three ANDAs.

7                    It seemed to me that in order to

8    do their job, and I guess this is particularly

9    the plaintiffs' counsel -- or actually, no.  I

10   guess this is -- obviously it applies for

11   everybody.  But it seemed me that those are

12   things that the in-house counsel or managing and

13   directing litigation or whatever exactly they're

14   doing, those are things that they need to be

15   informed.

16                   It seemed to me that products

17   presently in development are undergoing FDA

18   approval or future products, you know, unless

19   products are the ones that are the subject of

20   the ANDAs, which presumably, that's not what

21   we're talking about.  Patent applications that

22   are not yet published and the highly-sensitive

23   financial information, I couldn't really figure

24   out why the in-house counsel would need them to

1    do their jobs in this case.

2              And so what I was thinking was,

3    and it doesn't matter to me exactly how you do

4    it, but it seems to me that the latter three

5    items should be sort of outside counsel only,

6    and the other three items could be given to the

7    in-house counsel to have access to.  Does

8    anybody want to comment on that?

9              MR. LYNCH:  Thank you, Your Honor.

10   James Lynch on behalf of Par.  Par and Alvogen

11   agreed, as the letter we submitted to Your Honor

12   notes, that they were found excluding financial

13   information from in-house counsel review.  And

14   so we certainly take no exception to that.

15             With respect to the two other

16   categories, which in the submissions we made,

17   Exhibit 1, Paragraph 2.5, Numbers 3 and 5, we

18   take Your Honor's point and note that, at least

19   with respect to category five, which relates to

20   unpublished patent applications or information

21   that constitutes a trade secret, that could be

22   implicated in the matter that the Court -- which

23   is probably the third issue that we're going to

24   come to today.

1              And I guess what I would say to

2     Your Honor is as long as we can come back to you

3     at some future date and ask that those two

4     categories, which for the moment are going to be

5     excluded from in-house counsel review, and make

6     a new case why under some circumstances it would

7     be appropriate and necessary for them to see

8     those kinds of documents.  Is that something

9     that you'd be amenable to hearing if it came to

10    that?

11              THE COURT:  Probably.  All right.

12    So I hear what you're saying.  What about on

13    this side?

14              MR. LADOW:  Your Honor, for the

15    plaintiffs with respect to the NDA and nonpublic

16    correspondence with FDA, let me take those

17    separately.  So I think from our point of view

18    the question is are the in-house counsel

19    competitive decision makers, and do they have a

20    need for this information under the standards by

21    the caselaw?

22              THE COURT:  Well, I think they are

23    competitive decision makers, and I do think they

24    also have a need.

1           MR. LADOW:  Okay.  So let me

2    address the second part then.  In terms of

3    needs, we would say to Your Honor that with

4    respect to the NDA, it's not necessary for those

5    in-house counsel to have unfettered access to

6    plaintiffs' NDA because the NDA in and of itself

7    doesn't factor into infringement.

8                What infringement is going to

9    depend on are the claims of the asserted

10   patents, as Your Honor knows, and the generic's

11   proposed products.  So what's in there.  And the

12   NDA won't really factor into that, at least on

13   its face.  They could come back to the Court if

14   it did in some way and that became necessary.

15               On validity, I don't see how the

16   NDA necessarily factors into a validity

17   analysis.  They're going to depend on mainly

18   prior art and expert testimony.  So from our

19   point of view, as far as the NDA is concerned,

20   we just don't see a demonstrable need by the

21   identified in-house counsel for that information

22   in order to perform the tasks that they need to.

23   And from our point of view, that's outweighed by

24   the desire of the plaintiffs to keep a tighter

1     confidentiality restriction around that

2     information.

3           And the same basically is true

4     with respect to the nonpublic correspondence

5     with FDA.  I don't think that's going to factor

6     into the patent merits issues, but what it can

7     do is provide the in-house generic counsel with

8     the potential roadmap for some additional

9     strategy that they're going to undertake with

10    respect to these proposed products or with other

11    aspects of the products.

12           So it's the same situation where

13    we don't see a demonstrable need in terms of

14    management and the legal side of the case, and

15    we think that it's outweighed by a legitimate

16    concern to keep that confidential until such

17    time as something actually comes up and they

18    want to either take it to us, and if we can't

19    work it out, to take it to the Court.

20           THE COURT:  All right.  Does

21    anybody else want to say anything?

22           MR. LYNCH:  Your Honor, I think

23    these points are pretty well addressed in the

24    papers.  I would just emphasize that, as Your

1    Honor is aware, as we cite in Par and Alvogen's

2    submission, the purpose of allowing in-house

3    counsel access is to put the decision makers

4    making the judgment calls internal to the

5    company in the same position as outside counsel.

6    That person can't function, can't serve their

7    client, their in-house client, if they aren't

8    able to do that.

9              So if the information is central

10   enough to the case to be discoverable and used

11   in the litigation and available to outside

12   counsel, it ought to be available to in-house

13   counsel unless there is some kind of unique

14   reason that would make it subject to abuse or

15   unfair advantage.

16             And for the reasons that counsel

17   says that we have to believe in the

18   enforceability of the protective order, and for

19   the same reason that the Courts note that

20   in-house counsel like -- I was going to say

21   outhouse counsel -- like outside counsel are

22   officers of the Court and are subject to the

23   same duties and obligations.  We have to expect

24   that they can comply.

1          THE COURT:  Yeah, the question of

2     the integrity of in-house counsel, that's not at

3     issue.  It's never at issue in these things.  I

4     mean, because, you know, we're talking about

5     inadvertent disclosure.  And so it does seem to

6     me that while I hear what the plaintiff has

7     said, it does seem to me that there's a certain

8     amount of context relevant to the decisions that

9     in-house counsel has to make in the case.  And

10    being aware of what's going on with FDA and

11    having the NDA seems to be part of what's

12    necessary to give them the context for decisions

13    that they make.

14          And so I think that the two

15    identified counsel, who I accept they're

16    competitive decision makers, that it's

17    reasonable justification for allowing them

18    access to those documents.

19          MR. LADOW:  Your Honor, may I ask

20    for clarification?

21          THE COURT:  Yes.

22          MR. LADOW:  Understanding that

23    that's the Court's ruling, with respect to the

24    ANDAs, the A-N-D-As, and the generics'

1   correspondence with FDA, do I understand Your

2   Honor to say that that information will be

3   reciprocally available to plaintiffs' in-house

4   counsel?

5           THE COURT:  I would think it would

6   be.  And certainly, I mean, I keep hearing in

7   these cases about, I guess, plaintiffs' counsel.

8   And maybe it's outside counsel, so maybe it's

9   not usually what I hear about.  It's not clear

10  exactly who's being spoken about, but it seems

11  that the production of the correspondence with

12  the FDA on the ANDAs is routine; routine, at

13  least, in the sense of somebody gets it on your

14  side.

15          And I do think that the same logic

16  applies that your counsel, in order to do their

17  job -- because it's very specific to this case,

18  that's the reason why they have a greater need

19  for it.  And some of the other things, you know,

20  in some larger perspective would inform their

21  judgments, but they're not very specific to this

22  case, and it is very sensitive information.  So

23  did that give you the clarification you wanted?

24          MR. LADOW:  I think so.  I have a

1     very specific question then along those lines,

2     and that is we sent an interrogatory to the

3     defendants about whether they have received an

4     acceptance for filing letter from the FDA.  So

5     this is correspondence --

6                    THE COURT:  This is to Par?

7                    MR. LADOW:  All three.  And they've

8     responded.  And Watson has told us that we can

9     give up that information to our in-house

10    counsel.  We don't have a response yet from

11    Alvogen and Par.

12                   But what I understand the Court is

13    saying today on this issue is that that kind of

14    information that's reflected in correspondence

15    from the FDA to the generics, that if they can

16    see the plaintiffs' correspondence with FDA,

17    that our in-house counsel would have access to

18    the reciprocal information, including this

19    so-called AFF letter, or acceptance for filing

20    information.

21                   THE COURT:  Right.

22                   MR. LADOW:  Thank you, Your Honor.

23                   THE COURT:  All right.  Knowing

24    that that's what my view is, can you come to a

1  protective order between yourselves without

2  anything more from me?

3           MR. LYNCH:  I believe that we can,

4  Your Honor.  I think that your order is clear.

5           MR. LADOW:  I believe so, Your

6  Honor.

7           THE COURT:  Okay.  All right.  So

8  let's go to the third issue, which is this

9  exciting stuff about the trade secrets.  So I

10  wrote down that there were sort of three issues.

11  One is the question of whether or not, I guess,

12  the plaintiffs said they were going to file

13  another suit against Par momentarily or --

14           MR. LADOW:  It's been filed, Your

15  Honor.

16           THE COURT:  Oh, it has?  Okay.  And

17  have you and Par discussed this issue between

18  yourselves in terms of -- because I saw what you

19  said is you want to dismiss the first lawsuit.

20  And I think you went second in this, so Par

21  didn't have a chance to respond.  So I have no

22  idea what their point of view is.  Or if they

23  did, I missed that in the letter.

24           But what you want to do is

1      essentially dismiss the present suit and

2      presumably slide the second suit right in with

3      nothing changed other than the 30-month deadline

4      runs from whenever the relevant date is in

5      connection with that, as opposed to what it was

6      with the first suit?  Is that right?

7                    MR. LADOW:  Actually not, Your

8      Honor.

9                    THE COURT:  Oh, okay.

10                    MR. LADOW:  We haven't discussed

11     this with Par, so we haven't had that

12     discussion.  But the situation is one where, as

13     you know, we believe that they had a premature

14     Paragraph IV --

15                    THE COURT:  Right.  I got that.

16                    MR. LADOW:  -- which kicked the

17     whole thing off early.  The difference between

18     when the 30-month stay would run from when we

19     got their initial letter back in July and

20     present letter in mid March of this year is

21     about eight months and two weeks.

22                    And from our point of view and

23     understanding, we haven't discussed it with them

24     yet, but from our point of view, it would reward

1    them for filing a premature Paragraph IV letter

2    by being able to push the schedule, get the

3    trial at the same time as a legitimate first

4    filer.  And really the schedule should be

5    decoupled in some way that makes sense to the

6    Court such that they don't have a trial date

7    that's on the same date.

8             And I will tell you, Your Honor,

9    that Alvogen is going to fall into the same

10   group.  And either by way of a stip or by way of

11   a motion, plaintiffs intend to proceed that way

12   and to ask for that kind of relief from the

13   Court.  And so from our point of view --

14             THE COURT:  Well, hold on just a

15   second.  Are you saying in so many words Watson,

16   in your opinion, has done things right and the

17   other two have not?

18             MR. LADOW:  Yes, Your Honor.  And

19   just to be clear, I'm not making any assertion

20   that anybody misrepresented anything.

21             THE COURT:  No.  No.  I'm sorry.

22   By *right*, I just meant legally correct manner.

23             MR. LADOW:  Yes, Your Honor.

24   Basically, the bottom line is that we believe

1    that Watson initiated their Hatch-Waxman

2    process --

3             THE COURT:  We don't need to go

4    into detail.  I think I've got what you're

5    saying.  All right.  So defendants -- you know,

6    we're not going to resolve anything here today

7    because either we're going to need to have some

8    briefing or you need to discuss things with the

9    plaintiff.  But is there anything either Par or

10    Alvogen wants to say, or I guess even Watson

11    wants to say since all these things possibly

12    impact each of you?

13             MR. LYNCH:  Yes.  Thank you, Your

14    Honor.  We haven't had a chance to discuss this

15    with counsel, so this is unrehearsed, and

16    forgive us for whatever sloppiness that imparts

17    on the process.  But it seems to me the very

18    sensible thing to do is the practical thing.

19    There isn't a controversy about when the

20    30-month stay begins to run.  Counsel's correct.

21    It's going to run beginning in March of 2014.

22    The infringement allegations in the new

23    complaint mirror those.  One thing we can do

24    very simply is Par could file a response to this

1  new complaint. We could file it -- today's

2  Monday. We could file tomorrow or Wednesday.

3  THE COURT: And presumably you just

4  take the old one and change the case number.

5  MR. LYNCH: Well, you make it sound

6  so simple. No, that's exactly what we'd do.

7  No, but I think we can file it very quickly.

8  And whatever mechanically and practically the

9  Court wants to do to make sense out of that,

10  maybe consolidate those two matters or whatever,

11  Par can stay on the same schedule that we're on.

12  It makes a lot of sense to do that, and that

13  would be a very simple solution to this.

14  And I take from Your Honor's input

15  that you don't want to hear sort of back and

16  forth about whether the Paragraph IV letters are

17  premature, what the implications for that are.

18  I'm happy to address that if you'd like to hear

19  it, but it doesn't change the fact that Par is

20  not going to dispute when the 30-month stay

21  runs. And if we need to memorialize that in a

22  stipulation or in some other way, we're prepared

23  to do that.

24  THE COURT: Is Alvogen of the same

1    point of view?

2              MR. SKLAR:  This issue was raised

3    last week or recently by plaintiff, and we're

4    dealing with our clients and how to address it.

5    I don't have a position of how best to work that

6    out.  It's something we need to address.

7              THE COURT:  All right.  Does Watson

8    have anything they want to say here?

9              MR. DALKE:  Similarly to Alvogen,

10   Your Honor, this is new to us, and I did not yet

11   have a chance to hear input from our client.

12             THE COURT:  Okay.  Well, so what I

13   said when I was addressing the plaintiff and

14   assuming what they wanted to do, that was just

15   an assumption on my part.  I'm open to the four

16   of you talking to each other.  And I guess what

17   I'd say is I expect that Reckitt vs. Watson is

18   going to stay on the schedule it's on.  Whether

19   or not Reckitt vs. Par and Alvogen stays on that

20   schedule or not, you know, that's something I'm

21   not going to offer an opinion on right now.

22             MR. LADOW:  Just to offer one

23   comment on that.  The Reckitt/Watson schedule,

24   the sequence here is that, as you know, the Par

1 case was the first one filed. And so when we

2 were in front of --

3         THE COURT: Right.

4         MR. LADOW: When we were in front

5 of the Court on the scheduling order, we backed

6 up the whole case. We shoehorned the whole

7 case. We set it up structure-based on the fact

8 that the 30-month stay could end at a certain

9 day in January of 2016 because of the Par case.

10         THE COURT: But Watson filed about

11 a month later.

12         MR. LADOW: Yeah. So it's about

13 six or seven weeks later, I believe. So I'm

14 only making the point that from our point of

15 view that if the Watson case was -- if we put a

16 little more room in the schedule, we can talk to

17 Watson about it by four weeks, five weeks, or

18 something. It might make sense because it was

19 actually arranged off of the Par initial filing

20 rather than the Watson initial filing. And

21 simply because you had said that it wouldn't

22 necessarily remain the same, I just wanted to

23 raise that now.

24         THE COURT: All right. Well, you

1       can talk with Watson, too.  I won't make any

2       promises to anybody about anything.  And so at

3       least two of the three defense counsel had said

4       they were still talking or in the process of

5       talking things over with their clients.  So why

6       don't you all talk to your clients, talk to each

7       other.

8                   I foresee that -- well, it seems

9       like the plaintiff and Watson might very well

10      agree to something or other.  It seems to me

11      that from what I've heard, it seems less likely

12      that Par and Alvogen and the plaintiff are going

13      to come to some harmonious agreement.  But if

14      you do, that's great.  If you don't, what kind

15      of schedule would you like to set to come back

16      and talk with me about it?

17                  MR. LADOW:  From the plaintiffs'

18      point of view, I think the difference is that we

19      discussed it with our clients, so we are

20      basically prepared to proceed with the Court or

21      with defendants as they are ready to do so.

22                  MR. LYNCH:  Your Honor, for Par I

23      would just say that, as I said earlier, with

24      respect to when the duration, the beginning and

1    end of the 30-month stay --

2              THE COURT:  Right.  I understand

3    that's not going to be disputed.

4              MR. LYNCH:  It's not a controversy.

5    It's Count 1 of the new complaint.  I think we

6    can get around that pretty readily.  The balance

7    of the complaint is the same.  We can answer it.

8    We will do that this week.  I think we would

9    submit whatever the appropriate motion or

10   request is to consolidate the matters, and

11   that's what we would intend to do.

12             Obviously, we'll talk to counsel

13   for plaintiffs and see if there is some

14   accomodation or stipulation to be reached, but I

15   would think that that's the most sensible

16   approach.  And I'm not sure there's going to be

17   a controversy to be resolved unless there's

18   something Your Honor's thinking of that we're

19   missing.

20             THE COURT:  Well, because I don't

21   see the plaintiff stipulating to something that

22   you want to do, but I could be wrong about that.

23             Well, I guess what I'd like to do

24   is set a date to hear from you all.  And so just

1    tell me what you think is a reasonable date.  I

2    understand the plaintiff to say they don't need

3    too much time.  But I'd like to pick something

4    that suits everybody, so that's a slightly

5    longer period of time.  When would you like to

6    send me something?

7              MR. LYNCH:  Your Honor, for Par I

8    think we could probably send you a letter in the

9    next couple days.

10             THE COURT:  So we have two other --

11             MR. SKLAR:  I was hoping to have a

12   week to two weeks to deal with my clients to

13   figure out what course of action makes sense

14   here and converse with plaintiffs.

15             THE COURT:  So what if we said two

16   weeks, and that gives you a chance to

17   communicate with your clients, communicate with

18   each other.  I mean, there is, after all, four

19   parties, so I imagine that might be the case

20   that all the defendants don't end up on the same

21   page.  I mean, maybe they will.  I don't know.

22   So do you want to say in two weeks you'll either

23   file a stipulation or a status report or one or

24   more motions?

1          MR. LYNCH:  Your Honor, we can do

2     that.  I guess my question is, and I think I may

3     have just simply missed this, the new complaint

4     that was filed last Friday was against Par.  And

5     I guess counsel is saying that there is going to

6     be a new complaint against Alvogen?

7          THE COURT:  That's certainly what I

8     heard.

9          MR. LADOW:  No, Your Honor.

10          THE COURT:  No.  Okay.

11          MR. LYNCH:  So I'm confused how

12     Alvogen is involved.

13          MR. LADOW:  I said that Alvogen is

14     in the same basket.  I don't want to say things

15     here that I understand are confidential.

16          THE COURT:  Okay.

17          MR. LADOW:  But in terms of what

18     Your Honor just asked, what happens in a couple

19     weeks, one way to look at it, at least in regard

20     to Par, because there is a complaint against

21     Par, is that the schedule in this new Par case

22     is going to be up to the Court.  And I was

23     thinking of it as a matter -- if Your Honor

24     wants a motion, we'll make a motion.  But it

1    could be in the nature of a scheduling

2    conference, if you will, as to how the schedule

3    of that case should or should not marry up with

4    the other cases.

5            THE COURT:  And so that's the

6    reason why -- you know, I have plenty of

7    motions.  So I'm perfectly amenable to doing

8    something some other way.  So I said status

9    report, stipulation, motion, because I really am

10   happy to give you all flexibility to do this

11   however you think best.  But I'm also perfectly

12   happy to -- I don't have my calendar with me to

13   set another time for you.

14          MR. LADOW:  Your Honor, we would

15   propose something like a letter to the Court, as

16   we've been doing for these proceedings, where if

17   don't have agreement, we can both write you a

18   letter saying what we think the positions should

19   be on that, and then the Court will go from

20   there.

21          THE COURT:  All right.

22          MR. LYNCH:  And Par is certainly

23   amenable to that.  My thought of it is it

24   doesn't sound to me that whatever issue might

1  implicate Alvogen has matured to the point that

2  they need to be on the same schedule in this

3  regard as Par.

4           I think what I would propose is

5  obviously we'll meet with counsel, and I would

6  expect to be able to present to Your Honor

7  relatively quickly the fact that Par has

8  answered the new complaint, that it has

9  submitted or is prepared to submit a request to

10 consolidate the matters, and that we have, in

11 discussion with counsel, identified any disputes

12 that we have about how the schedule should be

13 handled for Par going forward.  And we can frame

14 that in a short letter to the Court.

15           THE COURT:  All right.  Mr. Bickham?

16           MR. BICKHAM:  Your Honor, Tim

17 Bickham on behalf of MonoSol.  Just to be clear,

18 the original or the existing complaint against

19 Par, our position is there's no jurisdiction

20 over that.  There would not be a consolidation

21 between the new complaints and the old one.

22 There's going to be a dismissal of the old, and

23 we'll go forward with the new.

24           THE COURT:  Well, no.  I had the

1    impression from your letter that that was very

2    much your position.  So I understand your

3    position.  All right.

4                So today's a Monday.  Two weeks

5    from today if you can.  Ideally, do you think

6    it's possible that instead of getting competing

7    letters I can get just a joint letter so that

8    you have a chance to have some dialogue back and

9    forth, and yet I don't get one letter from each

10   of you and yet a responsive letter from each of

11   you?  Maybe one letter setting forth all your

12   various points of view, and we'll go from there.

13   Okay?

14                And you know, Alvogen and Watson,

15   one way or another I expect you to be

16   participating in this, too.

17                MR. SKLAR:  Right.

18                THE COURT:  Right?

19                MR. SKLAR:  Yes.

20                THE COURT:  Okay.  So one other

21   thing, which is I don't know where we are in

22   terms of the existing schedule, but everyone

23   should regard the existing schedule as being

24   active until told otherwise.  So if somebody has

1    something they're supposed to be doing, they

2    should keep on doing it.  Okay?

3               MR. LYNCH:  Yes, sir.

4               THE COURT:  All right.  So that was

5    issue number one, which I guess is not resolved.

6    And then issue number two -- and I apologize.  I

7    saw footnotes and such, but I didn't make enough

8    notes to myself to recall exactly what I got out

9    of them.

10              We've got this declaratory

11    judgment counterclaim, which seems to me to be

12    ripe for being dismissed for lack of subject

13    matter jurisdiction itself.  And yet, even

14    though the plaintiffs, who just all nodded their

15    heads yes, haven't filed anything -- and there

16    could be a lot of reasons for this.  But is one

17    of the reasons that because if you file

18    something you think that might hinder later on

19    if you do claim there is a trade secret

20    violation?

21               MR. HIBEY:  That's part of the

22    reason, Your Honor, among the other reasons that

23    were discussed at the last hearing.

24               THE COURT:  Yeah, I don't remember

1    the last hearing, but hold that thought.  I

2    forget.  It's just Par that's done this, right?

3              MR. HIBEY:  Right.

4              THE COURT:  Because they're the

5    only ones who have a relationship with MonoSol.

6              MR. HIBEY:  Yes, sir.

7              THE COURT:  And what's your view on

8    subject matter jurisdiction at this point?

9              MR. LYNCH:  I think the complaint

10    adequately alleges an interesting controversy.

11    I accept the denial by the plaintiffs that such

12    a controversy exists.  But because they haven't

13    moved to dismiss, it remains in the case.

14              And I think their decisions,

15    whatever they are, or reasons for not moving to

16    dismiss, which I have always expected and

17    includes this concern, they would not be able to

18    or it would hinder their ability to re-file

19    later.  That's a tactical decision, and it

20    leaves a claim in the case.  So I'll take your

21    questions, but there's a further part of that

22    answer.

23              THE COURT:  No.  Go ahead.  I'm

24    sorry.

1          MR. LYNCH:  So that's part of it.

2     And then you recall the last time we were here,

3     or you may not --

4          THE COURT:  No.  Actually, I don't

5     know if I recall it, but since you're busy

6     quoting me, I did read the relevant portions of

7     the conference.

8          MR. LYNCH:  Yeah.  And so when we

9     were here, the debate then was about the balance

10     of the ANDA that hadn't been produced by Par to

11     one of the plaintiffs.  And the representation

12     at the time was that if there's a trade secret

13     misappropriation claim in there, it's going to

14     have to be found in the ANDA.

15          And they've now had nine weeks or

16     so to study the ANDA, and they've responded to a

17     second interrogatory saying that they haven't

18     found information in there that independently

19     and necessarily establishes a misappropriation,

20     but that they have more work that they need to

21     do that includes fact discovery, that includes

22     depositions, and it may well include expert

23     analysis.

24          And as we've pointed out in our

1  submissions, they've now propounded discovery,

2  which very clearly is directed to trade secret

3  issues.  And so what we have is a ripe claim or

4  a claim that's at least still in the case, the

5  plaintiffs' representation and admission in an

6  interrogatory that they need further discovery

7  to assess the existence of a trade secret claim,

8  and then discovery that's directed precisely to

9  that.

10           THE COURT:  All right.

11           MR. LYNCH:  So that's a very long

12  way of saying, if they are going to demand

13  documents, which they have, which we think you

14  know, arguably -- and they say this in the their

15  papers, and I give that point some credit --

16  arguably, some of the documents they demand

17  could relate to plaintiffs' issues.

18           But I think there's no question

19  that the way they're framed, they reach well

20  beyond that as well.  And I think that if we're

21  going to do trade secret discovery, we need to

22  have an identification of those alleged secrets.

23           MR. BICKHAM:  Well, Tim Bickham on

24  behalf of MonoSol, Your Honor.  With all due

1    respect to counsel, I think he's wrong on the

2    facts, wrong on the law.  That line out of the

3    transcript where I said that if there is a trade

4    secret claim it would be found in the ANDA or

5    something like that, if there was a trade secret

6    or if there is a trade secret misappropriation,

7    it would be found in the product which is

8    embodied in the ANDA.

9               The claim is, or the issue here,

10   is how did Par get the information that allowed

11   them to develop the product.  So we have the --

12   the ANDA is just the FDA submission.  And we

13   never said that, you know, the trade secret

14   misappropriation claim, if there is one, would

15   live or die just on the ANDA.  It's how they got

16   the information and how it was used.

17               And frankly, that kind of

18   discovery is at issue in nearly all or maybe all

19   Hatch-Waxman cases.  It's the development of the

20   generic product.  You know, that's not trade

21   secret specific.  That's patent specific.

22   That's going to the infringement issues.

23               That's going to the issues like in

24   this case.  The generic companies say that the

1  patents were or are obvious.  And one of the

2  issues will be how much work did it take for

3  them to come up with their generic products.

4  And so the work, the back work leading to the

5  ANDA is relevant in the patent case.  It's

6  relevant in the trade secret case if there is a

7  trade secret case.

8  But we did not -- and I don't

9  think that the tenor of the transcript, even if

10  those words might be in there and buried in a

11  paragraph, that the tenor wasn't that we would

12  know in a binary way yes or no whether there was

13  a trade secret claim just by looking at the

14  ANDA.  And the counterclaim, the motion to

15  dismiss that we've spoken about this morning,

16  would also incorporate the counterclaim from our

17  point of view.

18  THE COURT:  When you say the motion

19  to dismiss we've spoken about, you mean the

20  motion to dismiss what we'll call the old Par

21  case?

22  MR. BICKHAM:  Yes, Your Honor.

23  THE COURT:  Okay.

24  MR. LYNCH:  And so it sounds like

1    the motion to dismiss then would be directed

2    also to the declaratory judgment trade secret

3    claim.

4            THE COURT:  I think that's what he

5    just said.  Yes.

6            MR. LYNCH:  I just wanted to make

7    sure I heard that correctly.  So we can take

8    that as it comes.  My only response to that --

9    and I take counsel's statements about his intent

10    in the last hearing and what he meant in the

11    transcript, and I didn't read that transcript

12    differently.  I think he said the ANDA will

13    either show it or that there could be more work

14    to be done.  It's the more work to be done that

15    is the issue presented by our letter brief.

16            When we talked last, Your Honor, I

17    acknowledged and Par acknowledged in its papers

18    that the two sort of reasons to require a trade

19    secret identification include to prevent the

20    fishing expedition and to frame discovery,

21    number one; and two, to prevent the molding, the

22    framing of the exact articulation of the trade

23    secrets on a post hoc basis based on what's

24    found in the opposing party's documents.  Here

1     those go together, right?

2              There's no question that in the

3     ANDA case, much of the discovery that gets done

4     and is necessary and will get done could relate

5     to a trade secret claim.  There's no question

6     about that.  But here there's also a lot of

7     discovery that we believe they intend to do and

8     have done, as evidenced by the document request

9     that we've identified, and what they've said to

10    the Court in their letter about needing

11    depositions and possibly expert testimony to

12    identify possible misappropriation claims.

13            And so they're acknowledging --

14    plaintiffs are acknowledging and actively

15    seeking discovery for the purpose of framing a

16    potential trade secret claim, and that's where

17    these two policies come together.  It is now a

18    fishing expedition that is at great risk of

19    molding asserted trade secrets on a post hoc

20    basis.  And that is -- it's the whole ball of

21    wax, as Your Honor knows, when you're the

22    defendant in a trade secret claim.

23            MR. HIBEY:  Could I -- Jim Hibey.

24    Could I --

1          THE COURT:  Just remind me, are you

2     two --

3          MR. HIBEY:  We're together.

4          THE COURT:  Oh, okay.  You're

5     partners.  I wasn't sure.  Go ahead.

6          MR. HIBEY:  Thank you.  If I could

7     address it, maybe we need to step back a bit.

8     But maybe even before I step back, if Par is

9     willing to stipulate to a dismissal of their

10    counterclaim without prejudice, this whole issue

11    goes away.  We're going to move to dismiss.

12          THE COURT:  Well, okay.

13          MR. HIBEY:  And the concern is

14    whether it's with or without prejudice because

15    as you've said --

16          THE COURT:  Well, you know,

17    dismissing a declaratory judgment without

18    prejudice, what does that just mean?  That just

19    means that you don't think there's a ripe

20    controversy.  So it's not as though there's a

21    ruling on the merits on whether or not there is

22    or is not a trade secret misappropriation.

23          MR. HIBEY:  And so that it's clear

24    that we are not foreclosed somewhere down the

1  road if there is a misappropriation of a trade

2  secret. We're not foreclosed from bringing that

3  claim, then this whole issue goes away for now.

4  THE COURT: Okay. So here's what I

5  think. I looked at the interrogatories, and it

6  seems to me -- or not interrogatories, the

7  request for production. It seems to me that the

8  request for production number 76 looked like a

9  trade secret request for production. The other

10  three seem to me -- they're the kind of things

11  that normally you're back and forth on, and

12  you'd eventually agree on doing something, and

13  they have some relevance to the patent issues.

14  So what I'd say about the

15  interrogatories -- I'm sorry. I keep wanting to

16  call them interrogatories. What I'd say about

17  the request for production is I certainly

18  wouldn't make -- certainly wouldn't make Par

19  answer number 76.

20  And the other three I would leave

21  for you to work out, but it certainly seems like

22  there's a core there that's a perfectly

23  relevant, a perfectly permissible kind of

24  request for production. You know on the --

1          MR. LADOW:  May I speak on that,

2     Your Honor?

3          THE COURT:  Yes.

4          MR. LADOW:  So on request 76, Any

5     communication with any current or former

6     employee or consultant of any of the plaintiffs.

7          THE COURT:  Wait a second.  Maybe I

8     got the numbers mixed up.  Hold on a minute.

9     Which exhibit number was it?

10          MS. SEVERANCE:  Number 5, Your

11     Honor.

12          THE COURT:  No, I don't think

13     that's it.

14          MR. LYNCH:  You may be thinking of

15     71 or 72.

16          THE COURT:  Well, hold on.  I've

17     got one with five exhibits, and one that

18     probably has five hidden exhibits.  And, in

19     fact, I tabbed the right page.  I'm sorry.  I

20     got that mixed up.  That's what happens when you

21     do it from memory.

22          It's not 76 that I was going to

23     get rid of.  It was 72.  All documents and

24     things relating to the communication by

1     defendant to another defendant or to any third

2     party of any information generated, produced, or

3     conveyed by MonoSol, including any confidential

4     information regarding film technology.

5              MR. LADOW:  Okay.  So let me ask a

6     clarifying question then.  From Reckitt's point

7     of view on the patent case, not on the trade

8     secret issue, we want to be able to find out to

9     what extent -- I'm sorry, not to what extent.

10    We want to be able to find out the source of the

11    information that either Par or its partner in

12    formulation, IntelGenX, had in coming up with

13    whatever its technology was.  Because it goes to

14    the validity side of the case insofar as they're

15    alleging obviousness.  So we want to know how

16    they came up with their product, what work did

17    that entail.  And we don't want to be foreclosed

18    in doing that.

19             THE COURT:  Well, I think if you

20    say anything that they gave to IntelGenX in

21    connection with generating the product, that's a

22    different question.  But I'm just looking at a

23    very broad thing.  Any defendant, any third

24    party --

1          MR. LADOW:  Okay, Your Honor.

2          THE COURT:  So that's one of the

3    reasons why I don't like deciding requests for

4    production or interrogatories.  Because they're

5    usually written so broadly that they include

6    anything, so it's often hard for me to know

7    what's there.  But reading it the way it's

8    written, it looks like a request for trade

9    secrets.  To the extent that you narrow it down

10   to things given to IntelGenX, that may be an

11   entirely different question.

12         MR. LADOW:  Thank you, Your Honor.

13         THE COURT:  But I also, from the

14   back and forth I've gotten over time on the

15   trade secret counterclaim, I really don't think

16   there is subject matter jurisdiction right now.

17   There's the most ethereal of reasons to believe

18   that there's an actual controversy.

19              And so I think to the extent there

20   is actually trade secret discovery being done,

21   I'm going to essentially stay that until I get

22   this motion to dismiss.  And I have to say that

23   I really can't imagine I'm not going to grant

24   this motion to dismiss.  But I really don't see

1   -- everything I see just tells me that having

2   trade secret in this is that there's no concrete

3   dispute.  There's no real controversy between

4   the parties right now.

5             And in any event, you know,

6   certainly the request for production as it is

7   right now, I don't like it.  It's extremely

8   broad.  If plaintiff narrows it down, certainly

9   what I say doesn't have any impact on that.  The

10  other ones I expect in the normal course you'd

11  narrow it down anyhow.  But they didn't strike

12  me as they looked like trade secret requests for

13  production in disguise, or maybe not in

14  disguise.  So does that resolve everything?

15            MR. LYNCH:  It does address it,

16  Your Honor.  One other point that I wanted to

17  make is -- and I take Your Honor's point about

18  your view on the present merits of the trade

19  secret declaratory judgment claim, and we had

20  this discussion when we were before you last.

21  And as I said at that time, the principal

22  concern that Par has is that this claim will

23  come out very near the end of the case and that

24  will push the 30-month stay and so forth --

1          THE COURT:  If it comes up near the

2     end of the case, it's going to end up as a

3     separate case.  I'm not going to -- I say this

4     as definitively as I can at this point because

5     you can never tell, but I think the Delaware

6     counsel who've seen me in these ANDA cases, we

7     stay on schedule for the trial.  Sometimes the

8     counsel will take it off, and then they may or

9     may not live to regret that.

10          But when I've had disputes and

11    things arising late on, I've handled them as

12    best I can and told you to just keep heading to

13    trial.

14          So once I get these things

15    scheduled, for lots of reasons, it's more

16    important than in most cases to keep on

17    schedule.

18          MR. LYNCH:  Understood.  And I

19    suppose one last thing is we will, in connection

20    with the discussions we're going to have with

21    counsel and the submission we'll make within the

22    next two weeks to Your Honor, we'll identify a

23    date by when they would submit a motion to

24    dismiss the existing Par complaint or the first

1    Par complaint.

2              THE COURT:  Well, why don't you

3    talk with them.  It might not be necessary.  But

4    if it is necessary, you can come up with a date.

5              MR. LYNCH:  Very well.

6              THE COURT:  Okay?  Covered

7    everything that's on the agenda here?

8              MR. HIBEY:  Yes, Your Honor.

9              THE COURT:  Okay.  When do you

10   think that I might expect to see the protective

11   order?

12             MR. LYNCH:  I would think that's

13   something we would be able to work out by the

14   end of this week.  That would be my expectation.

15             THE COURT:  Okay.  I will tell my

16   staff to keep an eye open for it next Monday,

17   but I will regard that as a soft deadline.

18   Okay?

19             All right.  Well, if there's

20   nothing else have a good day, and I will see you

21   all probably soon.

22             (The matter concluded at 12:00 p.m.)

23

24

1        CERTIFICATE OF REPORTER

2

3        I, Justine C. Kiechel, court

4   reporter and a Notary Public, do hereby certify

5   that the foregoing is a true and accurate

6   transcript of the foregoing proceeding.

7

8        I further certify that I am not

9   counsel, attorney, or relative of either party,

10  or otherwise interested in the event of this

11  suit.

12

13

14

15

16

17                          /s/Justine C. Kiechel

18                          Justine C. Kiechel

19

20

21  Dated:  4/9/14

22

23

24

# 0

**08-889** [1] - 7:3

# 1

**1** [3] - 6:8, 10:17, 26:5
**11:06** [1] - 2:1
**12:00** [1] - 47:22
**13-1461** [1] - 3:4
**13-1461-RGA** [1] - 1:5
**13-1674-RGA** [1] - 1:13
**13-2003-RGA** [1] - 1:20
**14.1** [1] - 6:16

# 2

**2** [2] - 7:5
**2.5** [1] - 10:17
**2014** [2] - 2:1, 21:21
**2016** [1] - 24:9
**22-410** [2] - 7:23, 9:1

# 3

**3** [2] - 6:11, 10:17
**30-month** [7] - 19:3, 19:18, 21:20, 22:20, 24:8, 26:1, 45:24

# 4

**4/9/14** [1] - 48:21

# 5

**5** [2] - 10:17, 42:10

# 6

**6.4** [1] - 6:9

# 7

**7** [1] - 2:1
**70** [2] - 6:8, 7:6
**71** [2] - 7:5, 42:15
**72** [2] - 42:15, 42:23
**76** [4] - 41:8, 41:19, 42:4, 42:22

# 8

**844** [1] - 2:1

# A

**A-N-D-As** [1] - 15:24
**a.m** [1] - 2:1
**ability** [1] - 33:18
**able** [7] - 14:8, 20:2, 30:6, 33:17, 43:8, 43:10, 47:13
**abuse** [1] - 14:14
**accept** [2] - 15:15, 33:11
**acceptance** [2] - 17:4, 17:19
**access** [9] - 7:22, 8:24, 9:2, 9:3, 10:7, 12:5, 14:3, 15:18, 17:17
**accomodation** [1] - 26:14
**accurate** [1] - 48:5
**acknowledged** [1] - 38:17
**acknowledging** [2] - 39:13, 39:14
**ACTAVIS** [1] - 1:15
**Action** [1] - 3:4
**action** [1] - 27:13
**actions** [2] - 8:4, 9:3
**active** [1] - 31:24
**actively** [1] - 39:14
**activities** [1] - 5:24
**actual** [1] - 44:18
**additional** [1] - 13:8
**address** [7] - 4:18, 12:2, 22:18, 23:4, 23:6, 40:7, 45:15
**addressed** [1] - 13:23
**addressing** [1] - 23:13
**adequately** [1] - 33:10
**admission** [1] - 35:5
**advantage** [1] - 14:15
**AFF** [1] - 17:19
**agenda** [1] - 47:7
**agree** [2] - 25:10, 41:12
**agreed** [1] - 10:11
**agreement** [3] - 5:15, 25:13, 29:17
**ahead** [2] - 33:23, 40:5
**allegations** [1] - 21:22
**alleged** [1] - 35:22
**alleges** [1] - 33:10
**alleging** [1] - 43:15
**allowed** [1] - 36:10
**allowing** [2] - 14:2, 15:17
**ALVOGEN** [2] - 1:22, 1:22
**Alvogen** [15] - 2:19, 3:21, 10:10, 17:11, 20:9, 21:10, 22:24, 23:9, 23:19, 25:12, 28:6, 28:12, 28:13, 30:1, 31:14
**Alvogen's** [1] - 14:1
**amenable** [3] - 11:9, 29:7, 29:23
**amount** [1] - 15:8
**analysis** [2] - 12:17, 34:23
**ANDA** [12] - 34:10, 34:14, 34:16, 36:4, 36:8, 36:12, 36:15, 37:5, 37:14, 38:12, 39:3, 46:6
**ANDAs** [8] - 8:4, 8:6, 8:9, 9:2, 9:6, 9:20, 15:24, 16:12
**ANDREWS** [1] - 2:1
**answer** [4] - 26:7, 33:22, 41:19
**answered** [1] - 30:8
**anyhow** [1] - 45:11
**apologize** [1] - 32:6
**appear** [1] - 6:21
**APPEARANCES** [1] - 2:3
**application** [4] - 7:23, 7:24, 9:1, 9:6
**applications** [2] - 8:11, 9:21, 10:20
**applies** [2] - 9:10, 16:16
**approach** [1] - 26:16
**appropriate** [2] - 11:7, 26:9
**approval** [3] - 8:8, 8:10, 9:18
**April** [1] - 2:1
**areas** [1] - 6:7
**arguably** [2] - 35:14, 35:16
**arising** [1] - 46:11
**arranged** [1] - 24:19
**art** [1] - 12:19
**articulation** [1] - 38:22
**aspects** [1] - 13:11
**asserted** [2] - 12:9, 39:19
**assertion** [1] - 20:19
**assess** [1] - 35:7
**assume** [1] - 7:23
**assuming** [1] - 23:14
**assumption** [1] - 23:15
**attachments** [1] - 7:10
**attorney** [1] - 48:9
**available** [3] - 14:11,

3:21, 10:10, 17:11, 20:9, 21:10, 22:24, 23:9, 23:19, 25:12, 28:6, 28:12, 28:13, 30:1, 31:14
**aware** [2] - 14:1, 15:10

# B

**backed** [1] - 24:5
**background** [1] - 6:16
**balance** [2] - 26:6, 34:9
**ball** [1] - 39:20
**bar** [12] - 4:7, 5:18, 5:23, 5:24, 6:1, 6:2, 6:7, 6:12, 6:19, 6:20, 6:23
**based** [2] - 24:7, 38:23
**basis** [2] - 38:23, 39:20
**basket** [1] - 28:14
**became** [1] - 12:14
**beginning** [2] - 21:21, 25:24
**begins** [1] - 21:20
**behalf** [8] - 3:9, 3:11, 3:15, 4:11, 4:21, 10:10, 30:17, 35:24
**BENCKISER** [3] - 1:2, 1:10, 1:17
**Benckiser** [2] - 2:9, 3:2
**Benckiser's** [1] - 8:1
**best** [3] - 23:5, 29:11, 46:12
**between** [6] - 6:13, 18:1, 18:17, 19:17, 30:21, 45:3
**beyond** [1] - 35:20
**Bickham** [4] - 3:9, 30:15, 30:17, 35:23
**BICKHAM** [4] - 2:7, 30:16, 35:23, 37:22
**binary** [1] - 37:12
**bit** [1] - 40:7
**bottom** [1] - 20:24
**branded** [1] - 8:1
**breadth** [1] - 6:10
**brief** [1] - 38:15
**briefing** [1] - 21:8
**bringing** [1] - 41:2
**broad** [2] - 43:23, 45:8
**broadly** [1] - 44:5
**BROOK** [1] - 1:22
**Brook** [1] - 3:21
**burden** [1] - 5:19
**buried** [1] - 37:10
**busy** [1] - 34:5
**BY** [10] - 2:4, 2:6, 2:7, 2:9, 2:11, 2:14, 2:16, 2:19, 2:21, 2:23

# C

**CA** [3] - 1:5, 1:13, 1:20
**calendar** [1] - 29:12
**care** [1] - 4:7
**CARLYLE** [1] - 2:4
**case** [33] - 5:7, 5:8, 7:4, 10:1, 11:6, 13:14, 14:10, 15:9, 16:17, 16:22, 22:4, 24:1, 24:6, 24:7, 24:9, 24:15, 27:19, 28:21, 29:3, 33:13, 33:20, 35:4, 36:24, 37:5, 37:6, 37:7, 37:21, 39:3, 43:7, 43:14, 45:23, 46:2, 46:3
**caselaw** [1] - 11:21
**cases** [6] - 3:1, 16:7, 29:4, 36:19, 46:6, 46:16
**Castellano** [2] - 3:19, 3:21
**CASTELLANO** [2] - 2:16, 3:20
**categories** [2] - 10:16, 11:4
**category** [2] - 8:19, 10:19
**central** [1] - 14:9
**certain** [2] - 15:7, 24:8
**certainly** [9] - 10:14, 16:6, 28:7, 29:22, 41:17, 41:18, 41:21, 45:6, 45:8
**CERTIFICATE** [1] - 48:1
**certify** [2] - 48:4, 48:8
**cetera** [1] - 5:11
**challenge** [1] - 6:18
**chance** [5] - 18:21, 21:14, 23:11, 27:16, 31:8
**change** [2] - 22:4, 22:19
**changed** [1] - 19:3
**CI-74** [1] - 6:11
**Circuit** [1] - 5:22
**circumstances** [1] - 11:6
**cite** [1] - 14:1
**citizen's** [1] - 5:11
**Civil** [1] - 3:3
**claim** [17] - 32:19, 33:20, 34:13, 35:3, 35:4, 35:7, 36:4, 36:9, 36:14, 37:13, 38:3, 39:5, 39:16, 39:22, 41:3, 45:19,

45:22
**claims** [2] - 12:9,
39:12
**clarification** [2] -
15:20, 16:23
**clarifying** [1] - 43:6
**clause** [2] - 5:3, 5:4
**clean** [1] - 7:12
**clear** [5] - 16:9, 18:4,
20:19, 30:17, 40:23
**clearly** [1] - 35:2
**client** [3] - 14:7, 23:11
**clients** [6] - 23:4, 25:5,
25:6, 25:19, 27:12,
27:17
**closest** [1] - 3:10
**coming** [1] - 43:12
**comment** [2] - 10:8,
23:23
**communicate** [2] -
27:17
**communicating** [1] -
5:6
**communication** [2] -
42:5, 42:24
**companies** [1] - 36:24
**company** [1] - 14:5
**competing** [1] - 31:6
**competitive** [5] - 6:4,
7:1, 11:19, 11:23,
15:16
**complaint** [12] - 21:23,
22:1, 26:5, 26:7,
28:3, 28:6, 28:20,
30:8, 30:18, 33:9,
46:24, 47:1
**complaints** [1] - 30:21
**comply** [1] - 14:24
**concern** [4] - 13:16,
33:17, 40:13, 45:22
**concerned** [1] - 12:19
**concluded** [1] - 47:22
**conclusion** [1] - 7:2
**concrete** [1] - 45:2
**concretely** [1] - 7:19
**conference** [2] - 29:2,
34:7
**confidential** [7] - 5:5,
5:7, 5:10, 6:18,
13:16, 28:15, 43:3
**confidentiality** [2] -
7:16, 13:1
**confused** [1] - 28:11
**connection** [2] - 19:5,
43:21, 46:19
**consolidate** [3] -
22:10, 26:10, 30:10
**consolidation** [1] -
30:20
**constitutes** [1] - 10:21

**consultant** [1] - 42:6
**contain** [1] - 6:21
**context** [2] - 15:8,
15:12
**controversy** [8] -
21:19, 26:4, 26:17,
33:10, 33:12, 40:20,
44:18, 45:3
**converse** [1] - 27:14
**conveyed** [1] - 43:3
**copy** [1] - 7:12
**core** [1] - 41:22
**CORP** [2] - 1:7, 1:8
**Corp** [1] - 2:15
**correct** [2] - 20:22,
21:20
**correctly** [1] - 38:7
**correspondence** [9] -
8:5, 9:4, 11:16, 13:4,
16:1, 16:11, 17:5,
17:14, 17:16
**Counsel** [5] - 2:5, 2:7,
2:9, 2:14, 2:24
**counsel** [46] - 2:19,
7:8, 7:20, 8:15, 8:20,
8:21, 8:24, 9:9, 9:12,
9:24, 10:5, 10:7,
10:13, 11:5, 11:18,
12:5, 12:21, 13:7,
14:3, 14:5, 14:12,
14:13, 14:16, 14:20,
14:21, 15:2, 15:9,
15:15, 16:4, 16:7,
16:8, 16:16, 17:10,
17:17, 21:15, 25:3,
26:12, 28:5, 30:5,
30:11, 36:1, 46:6,
46:8, 46:21, 48:9
**counsel's** [2] - 21:20,
38:9
**Count** [1] - 26:5
**counterclaim** [5] -
32:11, 37:14, 37:16,
40:10, 44:15
**couple** [2] - 27:9,
28:18
**course** [3] - 6:15,
17:23, 45:10
**court** [1] - 48:3
**COURT** [74] - 1:1, 3:1,
3:6, 3:12, 3:18, 3:24,
4:5, 4:15, 4:20, 5:14,
8:3, 11:11, 11:22,
13:20, 15:1, 15:21,
16:5, 17:6, 17:21,
17:23, 18:7, 18:16,
19:9, 19:15, 20:14,
20:21, 21:3, 22:3,
22:24, 23:7, 23:12,
24:3, 24:10, 24:24,

26:2, 26:20, 27:10,
27:15, 28:7, 28:10,
28:16, 29:5, 29:21,
30:15, 30:24, 31:18,
31:20, 32:4, 32:24,
33:4, 33:7, 33:23,
34:4, 35:10, 37:18,
37:23, 38:4, 40:1,
40:4, 40:12, 40:16,
41:4, 42:3, 42:7,
42:12, 42:16, 43:19,
44:2, 44:13, 46:1,
47:2, 47:6, 47:9,
47:15
**Court** [15] - 10:22,
12:13, 13:19, 14:22,
17:12, 20:6, 20:13,
22:9, 24:5, 25:20,
28:22, 29:15, 29:19,
30:14, 39:10
**Court's** [1] - 15:23
**Courts** [1] - 14:19
**cover** [1] - 4:14
**covered** [3] - 4:24,
6:2, 47:6
**crafted** [1] - 6:12
**credit** [1] - 35:15
**current** [1] - 42:5

## D

**DALKE** [2] - 2:21, 23:9
**Dalke** [1] - 4:3
**Dan** [1] - 3:10
**DANA** [1] - 2:4
**DANIEL** [1] - 2:9
**date** [8] - 11:3, 19:4,
20:6, 20:7, 26:24,
27:1, 46:23, 47:4
**Dated** [1] - 48:21
**DAVID** [1] - 2:21
**David** [1] - 4:3
**days** [1] - 27:9
**deadline** [2] - 19:3,
47:17
**deal** [1] - 27:12
**dealing** [1] - 23:4
**debate** [1] - 34:9
**deciding** [1] - 44:3
**decision** [5] - 11:19,
11:23, 14:3, 15:16,
33:19
**decisions** [2] - 15:8,
15:12, 33:14
**declarations** [1] - 8:22
**declaratory** [4] -
32:10, 38:2, 40:17,
45:19
**decoupled** [1] - 20:5
**defendant** [4] - 30:22,

43:1, 43:23
**defendants** [8] - 1:9,
4:8, 7:11, 7:21, 17:3,
21:5, 25:21, 27:20
**Defendants** [2] - 1:16,
1:23
**defense** [1] - 25:3
**definitively** [1] - 46:4
**DELAWARE** [1] - 1:1
**Delaware** [2] - 2:2,
46:5
**demand** [2] - 35:12,
35:16
**demonstrable** [2] -
12:20, 13:13
**denial** [1] - 33:11
**depositions** [2] -
34:22, 39:11
**designated** [2] - 5:23,
7:20
**desire** [1] - 12:24
**detail** [1] - 21:4
**develop** [1] - 36:11
**development** [4] - 8:7,
8:10, 9:17, 36:19
**dialogue** [1] - 31:8
**die** [1] - 36:15
**difference** [2] - 19:17,
25:18
**different** [3] - 8:19,
43:22, 44:11
**differently** [1] - 38:12
**directed** [2] - 35:2,
35:8, 38:1
**directing** [1] - 9:13
**disclosure** [2] - 6:4,
6:24, 15:5
**discoverable** [1] -
14:10
**Discovery** [1] - 2:1
**discovery** [11] - 34:21,
35:1, 35:6, 35:8,
35:21, 36:18, 38:20,
39:3, 39:7, 39:15,
44:20
**discuss** [2] - 21:8,
21:14
**discussed** [5] - 18:17,
19:10, 19:23, 25:19,
32:23
**discussion** [4] - 6:13,
19:12, 30:11, 45:20
**discussions** [1] -
46:20
**disguise** [2] - 45:13,
45:14
**dismiss** [12] - 18:19,
19:1, 33:13, 33:16,
37:15, 37:19, 37:20,
40:9, 40:11, 44:22,

44:24, 46:24
**dismissal** [2] - 30:22,
40:9
**dismissed** [1] - 32:12
**dismissing** [1] - 40:17
**dispute** [2] - 22:20,
45:3
**Dispute** [1] - 2:1
**disputed** [1] - 26:3
**disputes** [3] - 4:6,
30:11, 46:10
**DISTRICT** [2] - 1:1, 1:1
**docket** [4] - 6:8, 7:4,
7:6
**document** [1] - 39:8
**documents** [6] - 11:8,
15:18, 35:13, 35:16,
38:24, 42:23
**done** [9] - 6:15, 20:16,
33:2, 38:14, 39:3,
39:4, 39:8, 44:20
**down** [5] - 18:10,
40:24, 44:9, 45:8,
45:11
**drug** [4] - 7:23, 7:24,
9:1, 9:5
**due** [1] - 35:24
**duration** [2] - 6:1,
25:24
**durational** [1] - 6:21
**duties** [1] - 14:23

## E

**early** [1] - 19:17
**eight** [1] - 19:21
**either** [9] - 9:5, 13:18,
20:10, 21:7, 21:9,
27:22, 38:13, 43:11,
48:9
**embodied** [1] - 36:8
**emphasize** [1] - 13:24
**employee** [1] - 42:6
**end** [7] - 24:8, 26:1,
27:20, 45:23, 46:2,
47:14
**enforceability** [2] -
5:2, 14:18
**entail** [1] - 43:17
**entirely** [1] - 44:11
**ESQ** [9] - 2:4, 2:6, 2:7,
2:9, 2:11, 2:14, 2:16,
2:19, 2:23
**essentially** [3] - 7:9,
19:1, 44:21
**establishes** [1] -
34:19
**et** [1] - 5:11
**ethereal** [1] - 44:17
**Eurand** [1] - 7:3

**event** [3] - 6:22, 45:5, 48:10
**eventually** [1] - 41:12
**evidenced** [1] - 39:8
**exact** [1] - 38:22
**exactly** [5] - 9:13, 10:3, 16:10, 22:6, 32:8
**exception** [1] - 10:14
**exciting** [1] - 18:9
**excluded** [1] - 11:5
**excluding** [1] - 10:12
**Exhibit** [3] - 6:8, 7:5, 10:17
**exhibit** [1] - 42:9
**exhibits** [2] - 42:17, 42:18
**existence** [1] - 35:7
**existing** [4] - 30:18, 31:22, 31:23, 46:24
**exists** [1] - 33:12
**expect** [6] - 14:23, 23:17, 30:6, 31:15, 45:10, 47:10
**expectation** [1] - 47:14
**expected** [1] - 33:16
**expedition** [2] - 38:20, 39:18
**expert** [3] - 12:18, 34:22, 39:11
**extent** [4] - 43:9, 44:9, 44:19
**extremely** [1] - 45:7
**eye** [1] - 47:16

**F**

**face** [1] - 12:13
**fact** [5] - 22:19, 24:7, 30:7, 34:21, 42:19
**factor** [3] - 12:7, 12:12, 13:5
**factors** [1] - 12:16
**facts** [1] - 36:2
**faith** [1] - 5:1
**fall** [1] - 20:9
**far** [1] - 12:19
**favor** [1] - 5:3
**FDA** [19] - 4:7, 5:18, 5:23, 6:19, 6:23, 8:5, 8:7, 8:10, 9:4, 9:17, 11:16, 13:5, 15:10, 16:1, 16:12, 17:4, 17:15, 17:16, 36:12
**Federal** [1] - 5:21
**figure** [2] - 9:23, 27:13
**file** [8] - 18:12, 21:24, 22:1, 22:2, 22:7, 27:23, 32:17, 33:18

**filed** [5] - 18:14, 24:1, 24:10, 28:4, 32:15
**filer** [1] - 20:4
**filing** [5] - 17:4, 17:19, 20:1, 24:19, 24:20
**film** [1] - 43:4
**financial** [4] - 8:13, 8:17, 9:23, 10:12
**FINEMAN** [2] - 2:11, 3:14
**Fineman** [2] - 3:13, 3:15
**FINGER** [1] - 2:11
**first** [7] - 3:2, 4:7, 18:19, 19:6, 20:3, 24:1, 46:24
**fishing** [2] - 38:20, 39:18
**five** [4] - 10:19, 24:17, 42:17, 42:18
**flexibility** [1] - 29:10
**footnotes** [1] - 32:7
**FOR** [1] - 1:1
**foreclosed** [3] - 40:24, 41:2, 43:17
**foregoing** [2] - 48:5, 48:6
**foresee** [1] - 25:8
**forget** [1] - 33:2
**forgive** [1] - 21:16
**former** [1] - 42:5
**formulation** [1] - 43:12
**forth** [6] - 22:16, 31:9, 31:11, 41:11, 44:14, 45:24
**forward** [2] - 30:13, 30:23
**four** [4] - 7:16, 23:15, 24:17, 27:18
**frame** [2] - 30:13, 38:20
**framed** [1] - 35:19
**framing** [2] - 38:22, 39:15
**frankly** [1] - 36:17
**Friday** [1] - 28:4
**front** [2] - 24:2, 24:4
**full** [1] - 4:16
**function** [1] - 14:6
**future** [4] - 8:8, 8:11, 9:18, 11:3

**G**

**generated** [1] - 43:22
**generating** [1] - 43:21
**generic** [4] - 13:7, 36:20, 36:24, 37:3
**generic's** [2] -

**generics** [1] - 17:15
**generics'** [1] - 15:24
**given** [2] - 10:6, 44:10
**Goldman** [1] - 4:2
**GOLDMAN** [1] - 2:23
**grant** [1] - 44:23
**great** [2] - 25:14, 39:18
**greater** [1] - 16:18
**grossly** [1] - 6:9
**GROUP** [1] - 1:22
**group** [1] - 20:10
**guess** [14] - 4:5, 7:20, 8:22, 9:8, 9:10, 11:1, 16:7, 18:11, 21:10, 23:16, 26:23, 28:2, 28:5, 32:5

**H**

**hand** [1] - 7:11
**handled** [2] - 30:13, 46:11
**Haney** [2] - 3:24, 4:2
**HANEY** [2] - 2:23, 4:1
**happy** [4] - 4:18, 22:18, 29:10, 29:12
**hard** [1] - 44:6
**harmonious** [1] - 25:13
**Hatch** [2] - 21:1, 36:19
**Hatch-Waxman** [2] - 21:1, 36:19
**heading** [1] - 46:12
**heads** [1] - 32:15
**hear** [7] - 11:12, 15:6, 16:9, 22:15, 22:18, 23:11, 26:24
**heard** [3] - 25:11, 28:8, 38:7
**hearing** [5] - 11:9, 16:6, 32:23, 33:1, 38:10
**hereby** [1] - 48:4
**Hibey** [2] - 3:8, 39:23
**HIBEY** [10] - 2:6, 32:21, 33:3, 33:6, 39:23, 40:3, 40:6, 40:13, 40:23, 47:8
**hidden** [1] - 42:18
**highly** [3] - 8:12, 8:17, 9:22
**highly-sensitive** [3] - 8:12, 8:17, 9:22
**hinder** [2] - 32:18, 33:18
**hoc** [2] - 38:23, 39:19
**hold** [4] - 20:14, 33:1, 42:8, 42:16

3:16, 3:21, 4:2, 4:11, 4:17, 4:23, 10:9, 10:11, 11:2, 11:14, 12:3, 12:10, 13:22, 14:1, 15:19, 16:2, 17:22, 18:4, 18:6, 18:15, 19:8, 20:8, 20:18, 20:23, 21:14, 23:10, 25:22, 27:7, 28:1, 28:9, 28:18, 28:23, 29:14, 30:6, 30:16, 32:22, 35:24, 37:22, 38:16, 39:21, 42:2, 42:11, 44:1, 44:12, 45:16, 46:22, 47:8
**Honor's** [4] - 10:18, 22:14, 26:18, 45:17
**hoping** [1] - 27:11
**house** [23] - 7:8, 7:20, 8:15, 8:20, 8:24, 9:12, 9:24, 10:7, 10:13, 11:5, 11:18, 12:5, 12:21, 13:7, 14:2, 14:7, 14:12, 14:20, 15:2, 15:9, 16:3, 17:9, 17:17

**I**

**idea** [1] - 18:22
**ideally** [1] - 31:5
**identification** [2] - 35:22, 38:19
**identified** [4] - 12:21, 15:15, 30:11, 39:9
**identify** [2] - 39:12, 46:22
**imagine** [2] - 27:19, 44:23
**impact** [2] - 21:12, 45:9
**imparts** [1] - 21:16
**implicate** [1] - 30:1
**implicated** [1] - 10:22
**implications** [1] - 22:17
**important** [1] - 46:16
**imposition** [1] - 5:22
**impression** [1] - 31:1
**IN** [1] - 1:1
**in-house** [23] - 7:8, 7:20, 8:15, 8:20, 8:24, 9:12, 9:24, 10:7, 10:13, 11:5, 11:18, 12:5, 12:21, 13:7, 14:2, 14:7, 14:12, 14:20, 15:2, 15:9, 16:3, 17:9, 17:17

**inadvertent** [1] - 15:5
**Inc** [3] - 2:10, 2:14, 2:24
**INC** [8] - 1:3, 1:7, 1:11, 1:15, 1:15, 1:18, 1:22, 1:22
**include** [3] - 34:22, 38:19, 44:5
**includes** [3] - 33:17, 34:21
**including** [2] - 17:18, 43:3
**incorporate** [1] - 37:16
**independently** [1] - 34:18
**inform** [1] - 16:20
**information** [28] - 5:6, 5:7, 5:10, 5:23, 6:5, 6:18, 7:1, 8:13, 8:17, 9:23, 10:13, 10:20, 11:20, 12:21, 13:2, 14:9, 16:2, 16:22, 17:9, 17:14, 17:18, 17:20, 34:18, 36:10, 36:16, 43:2, 43:4, 43:11
**informed** [1] - 9:15
**infringement** [4] - 12:7, 12:8, 21:22, 36:22
**initial** [3] - 19:19, 24:19, 24:20
**initiated** [1] - 21:1
**input** [2] - 22:14, 23:11
**insofar** [1] - 43:14
**instead** [1] - 31:6
**integrity** [1] - 15:2
**IntelGenX** [5] - 2:15, 3:16, 43:12, 43:20, 44:10
**INTELGENX** [1] - 1:7
**intend** [3] - 20:11, 26:11, 39:7
**intent** [1] - 38:9
**interested** [1] - 48:10
**interesting** [1] - 33:10
**internal** [1] - 14:4
**interrogatories** [5] - 41:5, 41:6, 41:15, 41:16, 44:4
**interrogatory** [3] - 17:2, 34:17, 35:6
**involved** [1] - 28:12
**involving** [1] - 6:19
**issuance** [1] - 5:16
**issue** [16] - 10:23, 15:3, 17:13, 18:8, 18:17, 23:2, 29:24,

32:5, 32:6, 36:9, 36:18, 38:15, 40:10, 41:3, 43:8

**issues** [8] - 13:6, 18:10, 35:3, 35:17, 36:22, 36:23, 37:2, 41:13

**item** [3] - 7:4, 7:6

**Item** [1] - 6:8

**items** [2] - 10:5, 10:6

**itself** [2] - 12:6, 32:13

**IV** [3] - 19:14, 20:1, 22:16

## J

**J.D** [1] - 2:21

**James** [2] - 4:12, 10:10

**JAMES** [2] - 2:6, 2:14

**January** [1] - 24:9

**Jeff** [1] - 3:21

**JEFFREY** [1] - 2:16

**Jim** [3] - 3:8, 3:16, 39:23

**job** [2] - 9:8, 16:17

**jobs** [1] - 10:1

**JOHNSON** [1] - 2:6

**Johnson** [1] - 3:9

**joint** [1] - 31:7

**JUDGE** [1] - 2:1

**Judge** [1] - 7:2

**judgment** [5] - 14:4, 32:11, 38:2, 40:17, 45:19

**judgments** [1] - 16:21

**July** [1] - 19:19

**jurisdiction** [4] - 30:19, 32:13, 33:8, 44:16

**justification** [1] - 15:17

## K

**keep** [8] - 12:24, 13:16, 16:6, 32:2, 41:15, 46:12, 46:16, 47:16

**KELLER** [1] - 2:16

**kicked** [1] - 19:16

**kind** [7] - 14:13, 17:13, 20:12, 25:14, 36:17, 41:10, 41:23

**kinds** [2] - 7:13, 11:8

**King** [1] - 2:1

**knowing** [1] - 17:23

**knows** [2] - 12:10, 39:21

## L

**Laboratories** [1] - 2:24

**LABORATORIES** [1] - 1:15

**lack** [1] - 32:12

**LADOW** [30] - 2:9, 4:23, 8:2, 11:14, 12:1, 15:19, 15:22, 16:24, 17:7, 17:22, 18:5, 18:14, 19:7, 19:10, 19:16, 20:18, 20:23, 23:22, 24:4, 24:12, 25:17, 28:9, 28:13, 28:17, 29:14, 42:1, 42:4, 43:5, 44:1, 44:12

**Ladow** [1] - 3:10

**larger** [1] - 16:20

**last** [9] - 23:3, 28:4, 32:23, 33:1, 34:2, 38:10, 38:16, 45:20, 46:19

**late** [1] - 46:11

**LATHAM** [1] - 2:13

**Latham** [2] - 3:17, 4:12

**latter** [1] - 10:4

**law** [1] - 36:2

**lawsuit** [1] - 18:19

**LAYTON** [1] - 2:11

**leading** [1] - 37:4

**least** [7] - 8:18, 10:18, 12:12, 16:13, 25:3, 28:19, 35:4

**leave** [1] - 41:20

**leaves** [1] - 33:20

**legal** [1] - 13:14

**legally** [1] - 20:22

**legitimate** [2] - 13:15, 20:3

**less** [1] - 25:11

**letter** [19] - 6:11, 10:11, 17:4, 17:19, 18:23, 19:19, 19:20, 20:1, 27:8, 29:15, 29:18, 30:14, 31:1, 31:7, 31:9, 31:10, 31:11, 38:15, 39:10

**letters** [6] - 5:4, 5:15, 6:14, 7:10, 22:16, 31:7

**levels** [1] - 7:16

**Leydig** [1] - 3:22

**LEYDIG** [1] - 2:18

**liberally** [1] - 5:21

**likely** [1] - 25:11

**limit** [1] - 6:21

**LIMITED** [3] -

1:11, 1:18

**line** [2] - 20:24, 36:2

**lines** [1] - 17:1

**listed** [1] - 7:22

**litigation** [2] - 9:13, 14:11

**live** [2] - 36:15, 46:9

**LLC** [4] - 1:4, 1:12, 1:19, 2:7

**LLP** [4] - 2:6, 2:13, 2:16, 2:20

**logic** [1] - 16:15

**LOHMANN** [1] - 1:8

**look** [1] - 28:19

**looked** [5] - 7:19, 8:19, 41:5, 41:8, 45:12

**looking** [2] - 37:13, 43:22

**looks** [1] - 44:8

**LTD** [1] - 2:18

**LTS** [1] - 1:8

**Lynch** [3] - 3:16, 4:12, 10:10

**LYNCH** [26] - 2:14, 4:11, 4:17, 10:9, 13:22, 18:3, 21:13, 22:5, 25:22, 26:4, 27:7, 28:1, 28:11, 29:22, 32:3, 33:9, 34:1, 34:8, 35:11, 37:24, 38:6, 42:14, 45:15, 46:18, 47:5, 47:12

## M

**makers** [4] - 11:19, 11:23, 14:3, 15:16

**management** [1] - 13:14

**managing** [1] - 9:12

**manner** [1] - 20:22

**March** [2] - 19:20, 21:21

**markups** [1] - 7:14

**marry** [1] - 29:3

**matter** [8] - 6:2, 10:3, 10:22, 28:23, 32:13, 33:8, 44:16, 47:22

**matters** [3] - 22:10, 26:10, 30:10

**matured** [1] - 30:1

**MAYER** [1] - 2:18

**Mayer** [1] - 3:23

**mean** [6] - 15:4, 16:6, 27:18, 27:21, 37:19, 40:18

**means** [1] - 40:19

38:10

**mechanically** [1] - 22:8

**meet** [1] - 30:5

**Megan** [1] - 4:2

**MEGAN** [1] - 2:23

**memorialize** [1] - 22:21

**memory** [1] - 42:21

**mentioned** [1] - 6:17

**merits** [3] - 13:6, 40:21, 45:18

**mid** [1] - 19:20

**might** [9] - 7:19, 24:18, 25:9, 27:19, 29:24, 32:18, 37:10, 47:3, 47:10

**minute** [4] - 4:9, 4:14, 4:16, 42:8

**mirror** [1] - 21:23

**misappropriation** [7] - 34:13, 34:19, 36:6, 36:14, 39:12, 40:22, 41:1

**misrepresented** [1] - 20:20

**missed** [2] - 18:23, 28:3

**missing** [1] - 26:19

**mixed** [2] - 42:8, 42:20

**molding** [2] - 38:21, 39:19

**moment** [1] - 11:4

**momentarily** [1] - 18:13

**Monday** [4] - 2:1, 22:2, 31:4, 47:16

**MonoSol** [6] - 2:7, 3:10, 30:17, 33:5, 35:24, 43:3

**MONOSOL** [3] - 1:4, 1:12, 1:19

**month** [1] - 24:11

**months** [1] - 19:21

**morning** [5] - 3:14, 3:19, 3:20, 4:1, 37:15

**most** [3] - 26:15, 44:17, 46:16

**motion** [12] - 20:11, 26:9, 28:24, 29:9, 37:14, 37:18, 37:20, 38:1, 44:22, 44:24, 46:23

**motions** [2] - 27:24, 29:7

**move** [1] - 40:11

**moved** [1] - 33:13

**moving** [1] - 33:15

4:11, 4:17, 4:23, 8:2, 10:9, 11:14, 12:1, 13:22, 15:19, 15:22, 16:24, 17:7, 17:22, 18:3, 18:5, 18:14, 19:7, 19:10, 19:16, 20:18, 20:23, 21:13, 22:5, 23:2, 23:9, 23:22, 24:4, 24:12, 25:17, 25:22, 26:4, 27:7, 27:11, 28:1, 28:9, 28:11, 28:13, 28:17, 29:14, 29:22, 30:16, 31:17, 31:19, 32:3, 32:21, 33:3, 33:6, 33:9, 34:1, 34:8, 35:11, 35:23, 37:22, 37:24, 38:6, 39:23, 40:3, 40:6, 40:13, 40:23, 42:1, 42:4, 42:14, 43:5, 44:1, 44:12, 45:15, 46:18, 47:5, 47:8, 47:12

**MS** [4] - 3:5, 3:8, 4:1, 42:10

**must** [1] - 5:23

**Mylan** [1] - 7:3

## N

**narrow** [2] - 44:9, 45:11

**narrowly** [1] - 6:12

**narrowly-crafted** [1] - 6:12

**narrows** [1] - 45:8

**nature** [1] - 29:1

**NDA** [9] - 8:6, 11:15, 12:4, 12:6, 12:12, 12:16, 12:19, 15:11

**near** [2] - 45:23, 46:1

**nearly** [1] - 36:18

**necessarily** [2] - 12:16, 24:22, 34:19

**necessary** [7] - 11:7, 12:4, 12:14, 15:12, 39:4, 47:3, 47:4

**need** [19] - 9:14, 9:24, 11:20, 11:24, 12:20, 12:22, 13:13, 16:18, 21:3, 21:7, 21:8, 22:21, 23:6, 27:2, 30:2, 34:20, 35:6, 35:21, 40:7

**needing** [1] - 39:10

**needs** [1] - 12:3

**never** [3] - 15:3, 36:13, 46:5

**new** [15] - 7:22, 7:24,

9:1, 9:5, 11:6, 21:22, 22:1, 23:10, 26:5, 28:3, 28:6, 28:21, 30:8, 30:21, 30:23
**next** [3] - 27:9, 46:22, 47:16
**nine** [1] - 34:15
**NO** [3] - 1:5, 1:13, 1:20
**nonpublic** [4] - 8:4, 9:4, 11:15, 13:4
**normal** [1] - 45:10
**normally** [1] - 41:11
**Notary** [1] - 48:4
**note** [3] - 6:9, 10:18, 14:19
**notes** [3] - 7:14, 10:12, 32:8
**nothing** [2] - 19:3, 47:20
**number** [10] - 3:4, 7:3, 22:4, 32:5, 32:6, 38:21, 41:8, 41:19, 42:9, 42:10
**Numbers** [1] - 10:17
**numbers** [1] - 42:8

### O

**obligations** [1] - 14:23
**obtain** [1] - 5:20
**obvious** [1] - 37:1
**obviously** [3] - 9:10, 26:12, 30:5
**obviousness** [1] - 43:15
**OF** [2] - 1:1, 48:1
**offer** [2] - 23:21, 23:22
**officers** [1] - 14:22
**often** [1] - 44:6
**old** [4] - 22:4, 30:21, 30:22, 37:20
**once** [1] - 46:14
**one** [28] - 4:9, 5:12, 7:11, 7:13, 18:11, 19:12, 21:23, 22:4, 23:22, 24:1, 27:23, 28:19, 30:21, 31:9, 31:11, 31:15, 31:20, 32:5, 32:16, 34:11, 36:14, 37:1, 38:21, 42:17, 44:2, 45:16, 46:19
**ones** [3] - 9:19, 33:5, 45:10
**open** [2] - 23:15, 47:16
**opinion** [2] - 20:16, 23:21
**opposed** [1] - 19:5
**opposing** [1] - 38:24

**order** [12] - 5:2, 5:17, 7:12, 9:7, 12:22, 14:18, 16:16, 18:1, 18:4, 24:5, 47:11
**original** [1] - 30:18
**otherwise** [2] - 31:24, 48:10
**ought** [4] - 8:24, 9:1, 9:3, 14:12
**outhouse** [1] - 14:21
**outside** [1] - 10:5, 14:5, 14:11, 14:21, 16:8
**outweighed** [2] - 12:23, 13:15
**overbroad** [1] - 6:9

### P

**p.m** [1] - 47:22
**Page** [1] - 6:11
**page** [2] - 27:21, 42:19
**papers** [5] - 4:14, 4:24, 13:24, 35:15, 38:17
**Par** [47] - 2:14, 3:3, 3:15, 4:8, 4:12, 5:18, 6:6, 10:10, 14:1, 17:6, 17:11, 18:13, 18:17, 18:20, 19:11, 21:9, 21:24, 22:11, 22:19, 23:19, 23:24, 24:9, 24:19, 25:12, 25:22, 27:7, 28:4, 28:20, 28:21, 29:22, 30:3, 30:7, 30:13, 30:19, 33:2, 34:10, 36:10, 37:20, 38:17, 40:8, 41:18, 43:11, 45:22, 46:24, 47:1
**PAR** [1] - 1:7
**Paragraph** [4] - 6:9, 19:14, 20:1, 22:16
**paragraph** [3] - 7:5, 10:17, 37:11
**parenthetical** [1] - 7:14
**part** [6] - 12:2, 15:11, 23:15, 32:21, 33:21, 34:1
**participating** [1] - 31:16
**particularly** [1] - 9:8
**parties** [7] - 5:17, 6:13, 7:10, 8:16, 8:18, 27:19, 45:4
**partner** [1] - 43:11
**partners** [1] - 40:5
**party** [4] - 5:22, 43:2, 43:24, 48:9

**party's** [1] - 38:24
**patent** [9] - 6:20, 8:11, 9:21, 10:20, 13:6, 36:21, 37:5, 41:13, 43:7
**patents** [2] - 12:10, 37:1
**perfectly** [4] - 29:7, 29:11, 41:22, 41:23
**perform** [1] - 12:22
**period** [1] - 27:5
**permissible** [1] - 41:23
**person** [1] - 14:6
**perspective** [1] - 16:20
**petitions** [1] - 5:11
**PH.D** [1] - 2:21
**PHARMACEUTICAL** [1] - 1:7
**Pharmaceutical** [2] - 2:14, 3:3
**PHARMACEUTICAL S** [6] - 1:3, 1:3, 1:11, 1:11, 1:18, 1:18
**Pharmaceuticals** [1] - 2:10
**pharmaceuticals** [1] - 3:3
**Phillips** [1] - 4:2
**PHILLIPS** [1] - 2:23
**pick** [1] - 27:3
**PINE** [1] - 1:22
**Pine** [1] - 3:21
**plaintiff** [10] - 6:16, 15:6, 21:9, 23:3, 23:13, 25:9, 25:12, 26:21, 27:2, 45:8
**Plaintiffs** [4] - 1:5, 1:13, 1:20, 2:5
**plaintiffs** [14] - 4:22, 5:12, 7:13, 11:15, 12:24, 18:12, 20:11, 26:13, 27:14, 32:14, 33:11, 34:11, 39:14, 42:6
**plaintiffs'** [8] - 9:9, 12:6, 16:3, 16:7, 17:16, 25:17, 35:5, 35:17
**plenty** [1] - 29:6
**point** [21] - 5:4, 10:18, 11:17, 12:19, 12:23, 18:22, 19:22, 19:24, 20:13, 23:1, 24:14, 25:18, 30:1, 33:8, 35:15, 37:17, 43:6, 45:16, 45:17, 46:4
**pointed** [1] - 34:24

31:12
**policies** [1] - 39:17
**portions** [1] - 34:6
**position** [5] - 14:5, 23:5, 30:19, 31:2, 31:3
**positions** [1] - 29:18
**possible** [2] - 31:6, 39:12
**possibly** [2] - 21:11, 39:11
**post** [2] - 38:23, 39:19
**potential** [2] - 13:8, 39:16
**practical** [1] - 21:18
**practically** [1] - 22:8
**precisely** [1] - 35:8
**prejudice** [3] - 40:10, 40:14, 40:18
**premature** [3] - 19:13, 20:1, 22:17
**prepared** [3] - 22:22, 25:20, 30:9
**present** [4] - 19:1, 19:20, 30:6, 45:18
**presented** [6] - 4:19, 6:3, 6:24, 7:11, 7:13, 38:15
**presently** [3] - 8:7, 8:9, 9:17
**presumably** [6] - 8:5, 8:21, 9:5, 9:20, 19:2, 22:3
**pretty** [2] - 13:23, 26:6
**prevent** [2] - 38:19, 38:21
**principal** [1] - 45:21
**proceed** [2] - 20:11, 25:20
**proceeding** [1] - 48:6
**proceedings** [1] - 29:16
**process** [3] - 21:2, 21:17, 25:4
**produced** [2] - 34:10, 43:2
**product** [6] - 8:1, 36:7, 36:11, 36:20, 43:16, 43:21
**production** [9] - 16:11, 41:7, 41:8, 41:9, 41:17, 41:24, 44:4, 45:6, 45:13
**products** [11] - 8:6, 8:8, 8:9, 8:11, 9:16, 9:18, 9:19, 12:11, 13:10, 13:11, 37:3
**prohibited** [1] - 6:1
**prohibits** [1] - 6:17
**pointe** [1] - 25:2

**propose** [2] - 29:15, 30:4
**proposed** [5] - 6:19, 6:23, 7:12, 12:11, 13:10
**propounded** [1] - 35:1
**proprietary** [2] - 6:4, 7:1
**prosecution** [1] - 6:20
**protective** [6] - 5:2, 5:17, 7:12, 14:18, 18:1, 47:10
**protects** [1] - 5:9
**provide** [1] - 13:7
**provision** [1] - 5:9
**Public** [1] - 48:4
**published** [2] - 8:12, 9:22
**purpose** [2] - 14:2, 39:15
**purposes** [1] - 5:8
**push** [2] - 20:2, 45:24
**put** [2] - 14:3, 24:15

### Q

**questions** [2] - 4:18, 33:21
**quickly** [2] - 22:7, 30:7
**quoting** [2] - 5:21, 34:6

### R

**raise** [1] - 24:23
**raised** [1] - 23:2
**rather** [1] - 24:20
**RB** [3] - 1:3, 1:11, 1:18
**re** [1] - 33:18
**re-file** [1] - 33:18
**reach** [1] - 35:19
**reached** [1] - 26:14
**read** [2] - 34:6, 38:11
**readily** [1] - 26:6
**reading** [1] - 44:7
**ready** [1] - 25:21
**real** [1] - 45:3
**really** [6] - 9:23, 12:12, 20:4, 29:9, 44:15, 44:23, 44:24
**reason** [5] - 14:14, 14:19, 16:18, 29:6, 32:22
**reasonable** [2] - 15:17, 27:1
**reasonably** [2] - 6:3, 6:23
**reasons** [10] - 5:12, 14:16, 32:16, 32:17, 32:22, 33:15, 38:18,

44:3, 44:17, 46:15
**received** [1] - 17:3
**recently** [1] - 23:3
**reciprocal** [1] - 17:18
**reciprocally** [1] - 16:3
**RECKITT** [3] - 1:2, 1:10, 1:17
**Reckitt** [6] - 2:9, 3:2, 3:11, 7:24, 23:17, 23:19
**Reckitt's** [1] - 43:6
**Reckitt/Watson** [1] - 23:23
**references** [1] - 7:16
**reflect** [1] - 6:3
**reflected** [1] - 17:14
**reflects** [1] - 6:23
**regard** [4] - 28:19, 30:3, 31:23, 47:17
**regarding** [1] - 43:4
**regret** [1] - 46:9
**relate** [3] - 9:5, 35:17, 39:4
**related** [2] - 8:4, 9:3
**relates** [1] - 10:19
**relating** [2] - 8:5, 42:24
**relationship** [1] - 33:5
**relative** [1] - 48:9
**relatively** [1] - 30:7
**relevance** [1] - 41:13
**relevant** [6] - 15:8, 19:4, 34:6, 37:5, 37:6, 41:23
**relief** [1] - 20:12
**remain** [1] - 24:22
**remains** [1] - 33:13
**remember** [1] - 32:24
**remind** [1] - 40:1
**reply** [1] - 6:11
**report** [2] - 27:23, 29:9
**REPORTER** [1] - 48:1
**reporter** [1] - 48:4
**representation** [2] - 34:11, 35:5
**request** [11] - 26:10, 30:9, 39:8, 41:7, 41:8, 41:9, 41:17, 41:24, 42:4, 44:8, 45:6
**requests** [2] - 44:3, 45:12
**require** [2] - 4:13, 38:18
**resolve** [1] - 21:6, 45:14
**resolved** [2] - 26:17, 32:5
**respect** [9] - 10:15,

10:19, 11:15, 12:4, 13:4, 13:10, 15:23, 25:24, 36:1
**respond** [1] - 18:21
**responded** [2] - 17:8, 34:16
**response** [3] - 17:10, 21:24, 38:8
**responsive** [1] - 31:10
**restriction** [1] - 13:1
**retreat** [1] - 6:10
**review** [2] - 10:13, 11:5
**reward** [1] - 19:24
**RICHARD** [1] - 2:1
**RICHARDS** [1] - 2:11
**rid** [1] - 42:23
**ripe** [3] - 32:12, 35:3, 40:19
**risk** [3] - 6:3, 6:24, 39:18
**road** [1] - 41:1
**roadmap** [1] - 13:8
**Robinson's** [1] - 7:2
**room** [1] - 24:16
**routine** [1] - 6:12
**ruling** [2] - 15:23, 40:21
**run** [3] - 19:18, 21:20, 21:21
**runs** [2] - 19:4, 22:21
**Rx** [1] - 2:7
**RX** [3] - 1:4, 1:12, 1:19

---

**S**

**Sanders** [1] - 3:11
**SANDERS** [1] - 2:8
**saw** [4] - 7:15, 7:17, 18:18, 32:7
**schedule** [16] - 20:2, 20:4, 22:11, 23:18, 23:20, 23:23, 24:16, 25:15, 28:21, 29:2, 30:2, 30:12, 31:22, 31:23, 46:7, 46:17
**scheduled** [1] - 46:15
**scheduling** [2] - 24:5, 29:1
**scope** [1] - 5:24
**second** [6] - 12:2, 18:20, 19:2, 20:15, 34:17, 42:7
**secret** [28] - 10:21, 32:19, 34:12, 35:2, 35:7, 35:21, 36:4, 36:5, 36:6, 36:13, 36:21, 37:6, 37:7, 37:13, 38:2, 38:19, 39:5, 39:10, 39:23,

40:22, 41:2, 41:9, 43:8, 44:15, 44:20, 45:2, 45:12, 45:19
**secrets** [5] - 18:9, 35:22, 38:23, 39:19, 44:9
**Section** [1] - 6:16
**see** [12] - 7:8, 11:7, 12:15, 12:20, 13:13, 17:16, 26:13, 26:21, 44:24, 45:1, 47:10, 47:20
**seeking** [3] - 5:18, 5:22, 39:15
**seem** [4] - 8:23, 15:5, 15:7, 41:10
**send** [2] - 27:6, 27:8
**sense** [6] - 16:13, 20:5, 22:9, 22:12, 24:18, 27:13
**sensible** [2] - 21:18, 26:15
**sensitive** [4] - 8:12, 8:17, 9:22, 16:22
**sent** [1] - 17:2
**separate** [1] - 46:3
**separately** [1] - 11:17
**sequence** [1] - 23:24
**serve** [1] - 14:6
**set** [4] - 24:7, 25:15, 26:24, 29:13
**setting** [1] - 31:11
**seven** [1] - 24:13
**SEVERANCE** [4] - 2:4, 3:5, 3:8, 42:10
**Severance** [1] - 3:4
**SHAW** [1] - 2:16
**shoehorned** [1] - 24:6
**short** [1] - 30:14
**show** [3] - 5:19, 5:23, 38:13
**shown** [1] - 6:7
**side** [4] - 11:13, 13:14, 16:14, 43:14
**sign** [1] - 8:23
**Similarly** [1] - 26:21
**simple** [2] - 22:6, 22:13
**simply** [3] - 21:24, 24:21, 28:3
**situation** [2] - 13:12, 19:12
**six** [1] - 24:13
**Sklar** [1] - 3:22
**SKLAR** [5] - 2:19, 23:2, 27:11, 31:17, 31:19
**slide** [1] - 19:2
**slightly** [2] - 8:18,

**sloppiness** [1] - 21:16
**SLR** [1] - 7:3
**so-called** [1] - 17:19
**soft** [1] - 47:17
**solution** [2] - 22:13
**sometimes** [1] - 46:7
**somewhere** [1] - 40:24
**soon** [1] - 47:21
**sorry** [5] - 20:21, 33:24, 41:15, 42:19, 43:9
**sort** [5] - 8:16, 10:5, 18:10, 22:15, 38:18
**sound** [2] - 22:5, 29:24
**sounds** [1] - 37:24
**source** [1] - 43:10
**specific** [5] - 16:17, 16:21, 17:1, 36:21
**Spence** [1] - 4:3
**SPENCE** [1] - 2:23
**spoken** [3] - 16:10, 37:15, 37:19
**staff** [1] - 47:16
**standards** [1] - 11:20
**statements** [1] - 38:9
**STATES** [1] - 1:1
**status** [2] - 27:23, 29:8
**stay** [10] - 19:18, 21:20, 22:11, 22:20, 23:18, 24:8, 26:1, 44:21, 45:24, 46:7
**stays** [1] - 23:19
**step** [2] - 40:7, 40:8
**Steptoe** [1] - 3:9
**STEPTOE** [1] - 2:6
**Steve** [1] - 3:15
**STEVEN** [2] - 2:11, 2:19
**Steven** [1] - 3:22
**still** [2] - 25:4, 35:4
**stip** [1] - 20:10
**stipulate** [1] - 40:9
**stipulating** [1] - 26:21
**stipulation** [3] - 22:22, 26:14, 27:23, 29:9
**straight** [1] - 7:9
**strategy** [1] - 13:9
**STRAWN** [1] - 2:20
**Strawn** [1] - 4:4
**Street** [1] - 2:2
**strike** [1] - 45:11
**structure** [1] - 24:7
**structure-based** [1] - 24:7
**study** [1] - 34:16
**stuff** [1] - 18:9

**subject** [8] - 6:2, 8:9, 9:19, 14:14, 14:22, 32:12, 33:8, 44:16
**submission** [3] - 14:2, 36:12, 46:21
**submissions** [2] - 10:16, 35:1
**submit** [3] - 26:9, 30:9, 46:23
**submitted** [3] - 8:21, 10:11, 30:9
**suggested** [1] - 6:12
**suit** [5] - 18:13, 19:1, 19:2, 19:6, 48:11
**suits** [1] - 27:4
**suppose** [1] - 46:19
**supposed** [1] - 32:1
**SYSTEMS** [1] - 1:8

---

**T**

**tabbed** [1] - 42:19
**tactical** [1] - 33:19
**tasks** [1] - 12:22
**Technologies** [1] - 2:15
**TECHNOLOGIES** [1] - 1:7
**technology** [2] - 43:4, 43:13
**tenor** [2] - 37:9, 37:11
**terms** [5] - 12:2, 13:13, 18:18, 28:17, 31:22
**testimony** [2] - 12:18, 39:11
**THE** [75] - 1:1, 1:1, 3:1, 3:6, 3:12, 3:18, 3:24, 4:5, 4:15, 4:20, 5:14, 8:3, 11:11, 11:22, 13:20, 15:1, 15:21, 16:5, 17:6, 17:21, 17:23, 18:7, 18:16, 19:9, 19:15, 20:14, 20:21, 21:3, 22:3, 22:24, 23:7, 23:12, 24:3, 24:10, 24:24, 26:2, 26:20, 27:10, 27:15, 28:7, 28:10, 28:16, 29:5, 29:21, 30:15, 30:24, 31:18, 31:20, 32:4, 32:24, 33:4, 33:7, 33:23, 34:4, 35:10, 37:18, 37:23, 38:4, 40:1, 40:4, 40:12, 40:16, 41:4, 42:3, 42:7, 42:12, 42:16, 43:19, 44:2, 44:13, 46:1, 47:2, 47:6,

47:9, 47:15
**THERAPY** [1] - 1:8
**they've** [5] - 17:7,
34:15, 34:16, 35:1,
39:9
**thinking** [5] - 8:14,
10:2, 26:18, 28:23,
42:14
**third** [4] - 10:23, 18:8,
43:1, 43:23
**three** [16] - 3:1, 4:6,
4:8, 6:7, 7:17, 8:4,
8:9, 9:2, 9:6, 10:4,
10:6, 17:7, 18:10,
25:3, 41:10, 41:20
**tighter** [1] - 12:24
**Tim** [3] - 3:9, 30:16,
35:23
**TIMOTHY** [1] - 2:7
**today** [4] - 10:24,
17:13, 21:6, 31:5
**today's** [2] - 22:1, 31:4
**together** [3] - 39:1,
39:17, 40:3
**tomorrow** [1] - 22:2
**topic** [2] - 4:10, 4:14
**trade** [32] - 10:21,
18:9, 32:19, 34:12,
35:2, 35:7, 35:21,
36:3, 36:5, 36:6,
36:13, 36:20, 37:6,
37:7, 37:13, 38:2,
38:18, 38:22, 39:5,
39:16, 39:19, 39:22,
40:22, 41:1, 41:9,
43:7, 44:8, 44:15,
44:20, 45:2, 45:12,
45:18
**transcript** [5] - 36:3,
37:9, 38:11, 48:6
**trial** [4] - 20:3, 20:6,
46:7, 46:13
**trigger** [1] - 5:24
**Troutman** [1] - 3:11
**TROUTMAN** [1] - 2:8
**true** [2] - 13:3, 48:5
**two** [22] - 4:8, 6:7,
7:21, 8:21, 10:15,
11:3, 15:14, 19:21,
20:17, 22:10, 25:3,
27:10, 27:12, 27:15,
27:22, 31:4, 32:6,
38:18, 38:21, 39:17,
40:2, 46:22

## U

**under** [2] - 11:6, 11:20
**undergoing** [3] - 8:7,
8:10, 9:17

**understood** [1] -
46:18
**undertake** [1] - 13:9
**unfair** [1] - 14:15
**unfettered** [1] - 12:5
**unique** [1] - 14:13
**UNITED** [1] - 1:1
**unless** [3] - 9:18,
14:13, 26:17
**unlike** [1] - 6:19
**unnecessary** [1] -
5:13
**unpublished** [1] -
10:20
**unrehearsed** [1] -
21:15
**up** [15] - 13:17, 17:9,
24:6, 24:7, 27:20,
28:22, 29:3, 37:3,
42:8, 42:20, 43:12,
43:16, 46:1, 46:2,
47:4

## V

**validity** [3] - 12:15,
12:16, 43:14
**various** [1] - 31:12
**view** [16] - 11:17,
12:19, 12:23, 17:24,
18:22, 19:22, 19:24,
20:13, 23:1, 24:15,
25:18, 31:12, 33:7,
37:17, 43:7, 45:18
**violation** [1] - 32:20
**Voit** [1] - 3:23
**VOIT** [1] - 2:18
**vs** [4] - 3:3, 7:3, 23:17,
23:19

## W

**wait** [1] - 42:7
**wants** [5] - 4:9, 21:10,
21:11, 22:9, 28:24
**WATKINS** [1] - 2:13
**Watkins** [2] - 3:17,
4:12
**WATSON** [1] - 1:15
**Watson** [19] - 2:24,
4:8, 5:19, 6:6, 7:21,
8:23, 17:8, 20:15,
21:1, 21:10, 23:7,
23:17, 24:10, 24:15,
24:17, 24:20, 25:1,
25:9, 31:14
**wax** [1] - 39:21
**Waxman** [2] - 21:1,
36:19
**Wednesday** [1] - 22:2

**week** [4] - 23:3, 26:8,
27:12, 47:14
**weeks** [11] - 19:21,
24:13, 24:17, 27:12,
27:16, 27:22, 28:19,
31:4, 34:15, 46:22
**who've** [1] - 46:6
**whole** [7] - 5:17,
19:17, 24:6, 39:20,
40:10, 41:3
**willing** [1] - 40:9
**Wilmington** [1] - 2:2
**Winston** [1] - 4:4
**WINSTON** [1] - 2:20
**WOMBLE** [1] - 2:4
**words** [2] - 20:15,
37:10
**write** [1] - 29:17
**written** [2] - 44:5, 44:8
**wrote** [1] - 18:10

## Y

**year** [1] - 19:20
**yourselves** [2] - 18:1,
18:18