

**WOMBLE CARLYLE SANDRIDGE & RICE**
A LIMITED LIABILITY PARTNERSHIP

222 Delaware Avenue
Suite 1501
Wilmington, DE 19801

Telephone: (302) 252-4320
Fax: (302) 252-4330
www.wcsr.com

Mary W. Bourke
Partner
Direct Dial: 302-252-4333
Direct Fax: 302-661-7733
E-mail: MBourke@wcsr.com

July 2, 2014

**VIA CM/ECF & HAND DELIVERY**
The Honorable Richard G. Andrews
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3555

Re:   *Reckitt Benckiser, et al. v. Par Pharmaceutical, Inc., et al.*, C.A. No. 14-422-RGA and
*Reckitt Benckiser, et al. v. Watson Laboratories, Inc.,* C.A. No. 13-1674-RGA

Dear Judge Andrews,

Together with this letter, the parties jointly submit the proposed Stipulated Protective Order in the above-referenced cases. The parties are in agreement with all portions of the Protective Order except for footnote 2 to section 6.1, which appears on page 8. Defendant Watson Laboratories, Inc. ("Watson") proposes that the footnote remain, and Plaintiffs Reckitt Benckiser Pharmaceuticals Inc., RB Pharmaceuticals Limited, and Monosol RX, LLC (collectively, "Plaintiffs") propose that the footnote be omitted. Plaintiffs' and Watson's respective positions regarding footnote 2 are below.

**Plaintiffs' Position**

It has consistently been Plaintiffs' position that certain confidential information (including financial and market information and relating to future products) should be disclosable only to Outside Counsel and not to opposing in-house counsel. The present dispute concerns Watson's proposed footnote no. 2 to section 6.1 of the Protective Order. It turns out that by that footnote Watson intends to allow its in-house to see motions, briefs, pleadings and expert reports that contain what would otherwise be designated as Outside Counsel Only material under the Protective Order (the "Highly Confidential-Outside Counsel's Eyes Only" designation as defined in section 2.6 pursuant to this Court's instructions at the April 7, 2014 discovery conference). Thus, under Watson's proposal, even though its in-house counsel would not be able to see the underlying produced documents, they could, nonetheless, have full access to material that the parties and the Court had placed under the Outside Counsel only designation when it appears in expert reports, motions, etc.



WOMBLE
CARLYLE
SANDRIDGE
& RICE
LLP

The Honorable Richard G. Andrews
July 1, 2014
Page 2

In this regard, the Court should be aware that Watson not only seeks to sell a competing generic film product to compete with Plaintiff RBP's Suboxone® film product but has been selling for over one year a generic version of RBP's predecessor product, Suboxone® tablets to treat the same indication—opioid dependence. Thus, Watson is presently competing in the same market space as RBP and seeks to do so further with the product proposed in Watson's ANDA. It is common in patent cases not to allow the competing parties' in-house personnel to see highly confidential, business sensitive financial and marketing information or information about future products. If anything, those concerns are further heightened here given that Watson is already competing in this market. Plaintiffs' submit that Watson's in-house counsel does not need access to such information in order to manage this litigation and that whatever desires Watson has in this regard are outweighed by the potential and unnecessary prejudice to Plaintiffs that providing such access would create.

As noted, Plaintiff's position has been consistent from the outset, e.g.:

"Defendants Par and Alvogen (but not Watson) demand that their inhouse counsel be allowed to view Plaintiffs' proprietary research and development information in a "middle tier" of confidential information. . . . Plaintiffs and Watson agree that a standard two-tier protective order is suitable for the issues in this litigation. Under the agreed framework, in-house counsel is not permitted to see "Highly Confidential" information, which is defined to include: (1) NDAs, (2) ANDAs, (3) research and development for future products, (4) non-public correspondence with FDA, (5) unpublished patent applications, and (6) financial information." (D.I. 56 p. 1, 3).

And even Watson's counsel stated: "Under Defendants' Proposal, in the Watson case, in-house counsel would have access to only the lowest tier, and not the middle and top tiers. In the Par and Alvogen cases, in-house counsel would have access to the lowest and middle tiers, but not the top tier. Furthermore, Watson has indicated that either proposal is acceptable." (D.I. 58 fn. 1.)

Accordingly, Plaintiffs submit that Watson's proposed footnote no. 2 should be omitted and that Watson's in-house counsel is not allowed to access information designated Outside Counsel Only under the Protective Order.

### Watson's Position

The dispute centers on footnote 2 ("FN2") of the proposed protective order. Watson proposed FN2 on February 4. Plaintiffs did not object to it until May 5. Given Plaintiffs' silence for almost four months, including during the protective order hearing on April 7, Plaintiffs have waived any objection. Plaintiffs now want the Court to permit them to exclude language to which Plaintiffs previously agreed. The Court should decline and hold Plaintiffs to their agreement.

In essence, FN2 allows designated in-house counsel to review unredacted pleadings, briefs, and expert reports—attorney-prepared documents—that contain references to material marked Highly Confidential. In-house counsel are still precluded from accessing underlying Highly Confidential material. FN2 is thus only a minimal exception to the non-disclosure rule.



Though minimal, FN2 is critically important to Watson, which requires similar language to be included in every protective order. To Watson, allowing in-house counsel to see unredacted attorney-prepared documents is essential to facilitate consulting with, advising, and directing outside counsel on key strategic decisions. In Watson's experience, waiting for redacted versions has not worked. It often takes days for the parties to agree on redacted documents that can be shared with in-house counsel. And documents can be redacted to such a degree as to make it near impossible for in-house counsel to provide meaningful guidance. Finally, waiting on redacted versions limits (often severely) in-house counsels' ability to review and comment on drafts and revisions, particularly when deadlines are short and turn-around times are quick.

Plaintiffs' objection to FN2 comes too late. Watson proposed it on February 4, in a redlined document containing proposed edits. Before sending the redline, counsel for Watson discussed the forthcoming changes by phone with Plaintiffs' counsel. Watson explained that it would agree to Plaintiffs' two-tiered confidentiality system—with levels of "Confidential" and "Highly Confidential"—rather than Par's proposed three-tiered system, but that in doing so Watson needed to include FN2. FN2 was specifically bargained-for in exchange for Watson's agreement to a two-tiered system.

Plaintiffs accepted and agreed to FN2 without comment. After Watson proposed the language, there were numerous e-mails, telephone conversations, negotiations, and back-and-forths that took place over the following month. Plaintiffs never raised a concern regarding FN2. And in March, when the parties asked the Court for a discovery conference on disputes related to the protective order, FN2 was not identified as one of the disputes; nor did Plaintiffs' letter brief address it. (*See* D.I. 57). Notably, Watson's briefing expressed no position on three tiers precisely because it thought there was agreement on FN2. It was not until May 5, when the protective order was close to being signed, that Plaintiffs raised this dispute. Plaintiffs' objection is too late.

Plaintiffs may argue that their position has always been that in-house counsel should not have access to Highly Confidential material. Even if true, these arguments were made late in the game—and only in response to Par's three-tiered proposal at a time when Watson's FN2 had already been accepted. Plaintiffs never indicated that they objected to FN2 and Plaintiffs have not made that argument. Instead, Plaintiffs appear to argue that they accepted FN2 based on a misunderstanding. Coming four months too late, and after already briefing other disputes, Plaintiffs have waived this objection. The Court should hold Plaintiffs to their previously agreed to language by including FN2.

Respectfully submitted,

*Mary W. Bourke*

Mary W. Bourke

cc: Daniel G. Brown (all via electronic mail)



The Honorable Richard G. Andrews
July 1, 2014
Page 4

Jennifer R. Saionz
James K. Lynch
Emily C. Melvin
Jennifer Koh
Michelle R. Ma
Steven J. Fineman
Katharine C. Lester
James F. Hurst
Michael K. Nutter
Sharick Naqi
Peter E. Perkowski
David P. Dalke
Melinda K. Lackey
Megan C. Haney
John C. Phillips, Jr.

32558882