

222 Delaware Avenue
Suite 1501
Wilmington, DE 19801

Telephone: (302) 252-4320
Fax: (302) 252-4330
www.wcsr.com

Mary W. Bourke
Partner
Direct Dial: 302-252-4333
Direct Fax: 302-661-7733
E-mail: MBourke@wcsr.com

July 3, 2014

**VIA CM/ECF**

The Honorable Richard G. Andrews
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3555

**Re:**   *Reckitt Benckiser, et al. v. Watson Laboratories, Inc.,* C.A. No. 13-1674-RGA , and
      *Reckitt Benckiser, et al. v. Par Pharmaceutical, Inc., et al.*, C.A. No. 14-422-RGA -
      Consolidated C.A. No. 13-1674-RGA

Dear Judge Andrews,

On behalf of Plaintiffs, this responds to the three questions posed regarding the proposed
Protective Order in the Court's Oral Order dated 7.2.14 (Dkt no. 70).

1.   **Is section 4.1 [of the proposed Protective Order] correct in not having a "highly
   confidential" category in the first sentence?**

No, the present draft is not correct.  This appears to be a typographical error.  The first
sentence of section 4.1 should include a "Highly Confidential" category that should read as
follows:

> Each page of a document and each thing that constitutes or contains
> CONFIDENTIAL, HIGHLY CONFIDENTIAL or HIGHLY CONFIDENTIAL-
> OUTSIDE COUNSEL'S EYES ONLY Information or Items shall be labeled or
> marked with the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL" or
> "HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL'S EYES ONLY" when the
> document or thing is provided or produced to the Receiving Party.

2.   **On page 8, footnote 2, should "highly confidential" read "highly confidential—
   outside counsel's eyes only"?**

Plaintiffs believe that footnote 2 at page 8 should be omitted in its entirety.  As explained
further in response to question 3 below, in any event, if footnote 2 were not omitted in its

entirety, the term "highly confidential" should ***not*** be read as including "highly confidential—outside counsel's eyes only" material:  such a reading was never agreed to by Plaintiffs and never even asserted until recently by Watson and would allow Watson inhouse counsel to see Outside Counsel Only information that, pursuant to the April 7, 2014 conference with the Court, is not disclosable to defendants' inhouse counsel.

**3.     Why didn't Plaintiff object to footnote 2 before? (What did Plaintiff think the footnote meant?)**

To begin with, Plaintiffs note that, as confirmed in a phone call with Watson's counsel today, it is Watson's position that footnote 2 permits Watson's inhouse counsel to see Highly Confidential-Outside Counsel Only information even though that footnote only references the Highly Confidential category.  (Evidently, Watson, based on further misunderstanding, viewed the present draft Protective Order as only having two categories, Confidential and Highly Confidential, as to Watson, but that is not how it is structured; rather there are three categories of confidentiality as to all parties.)

Watson's assertion that it somehow bargained or negotiated for footnote 2 is entirely incorrect.  That never happened.   As further explained below, Plaintiffs understood footnote 2 to mean that Watson's inhouse counsel could see "Highly Confidential" information in expert reports, briefs, etc., but not "Highly Confidential-***Outside Counsel Only***" material.  This issue only came up when, before finalizing the language, Mr. Ladow sought to confirm that understanding (in a 5.5.14 email) with Watson and Watson's counsel responded (in a 5.7.2014 email) that Watson purportedly thought the footnote included not only "Highly Confidential" material as the language of the footnote provides but also the higher level "Highly Confidential-Outside Counsel Only" category that is not referenced in the language of the footnote.

The actual sequence of events as to this footnote (as RBP's counsel Mr. Ladow can attest having been involved in all discussions on the Protective Order) is as follows.  Plaintiffs originally proposed (on 1.10.14) a Protective Order having two confidentiality tiers—Confidential and Highly Confidential.  Watson was in general agreement with that approach, but Par and Alvogen eventually proposed having three tiers—Confidential, Highly Confidential, and Highly Confidential-Outside Counsel Only.  (Watson was prepared to agree to either the two or three tier approach.)   The draft Protective Order that defendants circulated on 2.4.14 was the first draft to propose three tiers <u>and</u> the first draft to propose footnote 2.  Thus, footnote 2 was proposed in the context of Defendants also proposing the three tier confidentiality structure, and the footnote referenced only the middle tier, Highly Confidential, it did not reference the highest tier, Highly Confidential-Outside Counsel Only.

There was never any "negotiation" of footnote 2; it was simply included in defendants' 2.4.14 draft, and Plaintiffs understood it as meaning what it says, namely, that Watson's inhouse counsel could see Highly Confidential information in briefs, expert reports, etc.  As shown in Plaintiffs' 6.10.14 letter to the Court, it has always and consistently been Plaintiffs' position that defendants' inhouse counsel should not have access to the type of information that is designated

under the Highly Confidential-Outside Counsel Only category in the Protective Order. When the parties appeared before the Court on 4.7.14 to address Protective Order issues and the Court permitted a Highly Confidential-Outside Counsel Only category containing certain information, Watson never said that it was somehow of the understanding that its inhouse counsel could see such Outside Counsel Only information (even though Par's inhouse counsel, and Plaintiffs believe Watson's as well, clearly could not.)

It wasn't until 5.7.14 (when Watson responded to Mr. Ladow's 5.5.14 email that attempted to confirm and clarify the language of the footnote as excluding Highly Confidential-Outside Counsel Only information) that Plaintiffs learned that Watson was taking the position that the footnote included not only "Highly Confidential" material as the language of the footnote provides but also the higher level "Highly Confidential-Outside Counsel Only" category that is not referenced in the language of the footnote.  After receiving Watson's 5.7.14 email, Plaintiffs realized they were at an impasse with Watson on this issue, and the parties agreed to raise the issue with the Court.

Thus, the fact is that footnote 2 was never negotiated; that Plaintiffs, until this dispute arose in early May, understood it (as the language of the footnote itself reads) as only applying, and only being intended to apply, to Highly Confidential information and not to the highest tier—Highly Confidential—Outside Counsel Only information; and that Plaintiffs' position on this has been consistent from the outset.  There is no justification for Watson's inhouse counsel to see Outside Counsel Only information (which Par's inhouse counsel are also barred from seeing).  Accordingly, Plaintiffs respectfully seek a ruling that omits footnote 2 from the proposed Protective Order.

Respectfully submitted,

Mary W. Bourke

cc: Daniel G. Brown (all via electronic mail)
Jennifer R. Saionz
James K. Lynch
Emily C. Melvin
Jennifer Koh
Michelle R. Ma
Steven J. Fineman
Katharine C. Lester
James F. Hurst
Michael K. Nutter

Sharick Naqi
Peter E. Perkowski
David P. Dalke
Melinda K. Lackey
Megan C. Haney
John C. Phillips, Jr.

32714487