IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RECKITT BENCKISER PHARMACEUTICALS, INC., RB PHARMACEUTICALS LIMITED, and MONOSOL RX, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>WATSON LABORATORIES, INC.,<br><br>Defendant. | CA. No. 13-1674-RGA<br><br>Consolidated |
| RECKITT BENCKISER PHARMACEUTICALS INC., RB PHARMACEUTICALS LIMITED, and MONOSOL RX, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>PAR PHARMACEUTICAL, INC., INTELGENX TECHNOLOGIES CORP.,<br><br>Defendants. | C.A. No. 14-422-RGA |

## [PROPOSED] MARKMAN ORDER

The Court having considered the Parties' Joint Claim Construction Brief and Amended Joint Claim Construction Statement (D.I. 106, 108) and appendix (D.I. 107), and oral argument on December 3, 2014, **IT IS HEREBY ORDERED** that the terms below, as used in United States Patent Numbers 8,017,150; 8,475,832; and 8,603,514, are construed as follows:

1. "the polyethylene oxide comprises one or more low molecular weight polyethylene oxides and one or more higher molecular weight polyethylene oxides, the molecular weight of the low molecular weight polyethylene oxide being in the range of 100,000

to 300,000 and the molecular weight of the higher molecular weight polyethylene oxide being in the range of 600,000 to 900,000; and the polyethylene oxide of low molecular weight comprises about 60% or more of the polymer component" is construed as "The polyethylene oxide comprises (i) one or more polyethylene oxides having a lower average molecular weight in the range of 100,000 to 300,000; and (ii) one or more polyethylene oxides having a higher average molecular weight in the range of 600,000 to 900,000, and (iii) the polyethylene oxide having the lower average molecular weight comprises about 60% or more by weight in the polymer component."

2. "molecular weight" is construed as "average molecular weight."
3. "provide a local pH for said composition of a value sufficient to optimize absorption of said buprenorphine, wherein said local pH is from about 3 to about 3.5 in the presence of saliva" is construed as "provide a local pH for the composition sufficient to optimize absorption of said buprenorphine wherein said local pH is about 3 to about 3.5 in the presence of saliva in the mouth, where local pH refers to the pH of the region of the carrier matrix immediately surrounding the active agent as the matrix hydrates and/or dissolves, for example, in the mouth of the user."
4. "sufficient to optimize absorption of said buprenorphine" is construed as "sufficient to reach an optimum level of buprenorphine absorption that includes a bioequivalent absorption as compared to the absorption after administration of Suboxone® tablets."
5. "provide a local pH" is construed as "provide a local pH."
6. "bioequivalent absorption of buprenorphine to that of a tablet having an equivalent amount of buprenorphine" is construed as "80% to 125% of the Cmax and AUC

values for buprenorphine in a Suboxone® tablet having an equivalent amount of buprenorphine."

7. "flowable" is construed as having its plain and ordinary meaning, *i.e.*, "able to flow."[1]

8. "viscosity sufficient to aid in substantially maintaining non-self aggregating uniformity of the active in the matrix" is construed as "viscosity sufficient to provide little to no aggregation of the active within the film."

9. "substantially uniformly stationed" is construed as "stationed in the matrix such that individual dosage units do not vary by more than 10% from the intended amount of active for that dosage unit."

10. "taste-masking of the active" is construed as having its plain and ordinary meaning.

11. "capable of being dried without loss of substantial uniformity" is construed as "the film matrix is capable of being dried such that individual dosage units do not vary by more than 10% from the intended amount of active for that dosage unit."

DATED: December 18, 2014

/s/ Richard G. Andrews
Honorable Richard G. Andrews
United States District Judge

---

[1] Defendants withdrew their proposed construction at the *Markman* hearing, but reserved the right to argue that the term is indefinite, something they may do at a later date.