IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RECKITT BENCKISER PHARMACEUTICALS INC., RB PHARMACEUTICALS LIMITED, and MONOSOL RX, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>WATSON LABORATORIES, INC. and ACTAVIS LABORATORIES UT, INC.,<br><br>Defendants. | Civil Action No. 13-1674-RGA |
| RECKITT BENCKISER PHARMACEUTICALS INC., RB PHARMACEUTICALS LIMITED, and MONOSOL RX, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>PAR PHARMACEUTICAL, INC. and INTELGENX TECHNOLOGIES CORP.,<br><br>Defendants. | Civil Action No. 14-422-RGA |

## MEMORANDUM ORDER

Presently before the Court are: (1) the Motion in Limine of Plaintiffs Reckitt Benckiser Pharmaceuticals Inc., RB Pharmaceuticals Limited, and MonoSol Rx, LLC (collectively, "Plaintiffs") (D.I. 341-1); (2) the Motion in Limine of Defendants Par Pharmaceutical, Inc. and

IntelGenx Technologies Corp. ("Par") and Defendants Watson Laboratories, Inc. and Actavis Laboratories UT, Inc. ("Watson") (collectively, "Defendants") (D.I. 341-4); and (3) Watson's Motion in Limine to preclude Plaintiffs from Relying on "Partitioning" Analysis (D.I. 341-7). For the reasons stated below, **IT IS HEREBY ORDERED THAT**:

1. Plaintiffs' motion to preclude Defendants' expert Dr. Mansoor Amiji from testifying regarding the invalidity of the '514 and '832 patents is **GRANTED**. Under Federal Rule of Evidence 403, the Court has discretion to exclude relevant evidence if its probative value is substantially outweighed by a danger of "needlessly presenting cumulative evidence." Dr. Amiji relied on the expert reports of Defendants' other experts, Dr. Dyar and Dr. Bley, in forming his opinions regarding whether the asserted claims of the '514 and '832 patents were obvious in light of the prior art. (D.I. 341-1 at 7–8, 12–13). Dr. Amiji's obviousness opinions with respect to the asserted claims of the '514 and '832 patents lack reasoning or analysis. (*See id.*). I therefore conclude that the probative value of his testimony regarding those opinions would be substantially outweighed by its being needlessly cumulative of testimony provided by Dr. Dyar and Dr. Bley.[1]

2. Defendants' motion to preclude Plaintiffs' expert Dr. Langer from relying on certain post-dated references in support of his nonobviousness opinion as to the asserted claims of the '514 patent is **DENIED**. Defendants maintain that the references are inadmissible hearsay if offered to prove that drug content uniformity was a problem in the field at the time of the invention. (D.I. 341-4 at 3). Plaintiffs offer the references not for the truth of the matter asserted, but rather to show the state of the art, and therefore as bases upon which Dr. Langer concludes that the '514 patent was novel and not obvious. (*See* D.I. 341-4 at 27). Further, an

---

[1] The general rule of thumb, in this District, at least, is that a party is not allowed to present more than one expert to say the same thing.

2

expert may rely on inadmissible evidence "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. The facts or data relied on by the expert must be reliable and "good grounds" for his opinion. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (discussing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702). Defendants argue that Dr. Langer's opinions regarding the references at issue do not satisfy the *Daubert* standards because he "merely recites the teaching of these references without independently assessing the reliability of the techniques described in those references, and without connecting the analyses in those references to the prior-art relied upon in this case." (D.I. 341-4 at 3). Defendants further argue that the references do not contain any facts or data upon which an expert in his field would reasonably rely because many of them do not contain facts or data at all. (*Id.*).

Plaintiffs respond, and I agree, that "literature[] written by scientists unaffiliated with the parties and before any litigation" can be a reliable basis for Dr. Langer's opinion. (D.I. 341-5 at 2); *cf. United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994) (holding that expert reports "prepared for purposes of litigation are not, by definition, of a type reasonably relied upon by experts in the particular field" (internal quotation marks omitted)). In addition to the fact that the references were not prepared for litigation or authored by the parties, as peer-reviewed journal articles, a master's thesis, and a patent application, the references can be "good grounds" for the limited purposes for which Dr. Langer relied on them because they are the types of references vetted, if to varying degrees, by other members of the authors' field. I therefore conclude that Dr. Langer could reasonably rely on the references to evaluate whether drug content uniformity was an unresolved problem in the field and whether there existed objective indicia of nonobviousness such as praise for the invention.

Defendants argue that, even if the post-dated nonobviousness references at issue are admissible under Rule 703, they are irrelevant because they bear no relationship to the prior art asserted to prove obviousness. (D.I. 341-4 at 4). First, as Plaintiffs point out, the references are not irrelevant simply by virtue of having been published after the patent priority date. (D.I. 341-5 at 4); *see Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm., Inc.*, 748 F.3d 1354, 1360 (Fed. Cir.) (recognizing that evidence of nonobviousness arising after the date of invention can be relevant), *cert. denied*, 135 S. Ct. 759 (2014). Second, Defendants' argument that Dr. Langer's reliance on the references is not responsive to their expert's obviousness opinion relates to the proper weight to be afforded Dr. Langer's testimony rather than its admissibility.

Defendants' motion is denied for the reasons stated above. By denying the motion, I do not mean to indicate that any particular use of the references is proper, and thus Defendants should renew any objections they want to preserve at the appropriate time in the trial.

3. Watson's motion to preclude Plaintiffs from relying on Dr. Yau's "partitioning" infringement analysis is **DENIED**. Watson argues that Dr. Yau's partitioning analysis relating to infringement of the '150 patent should be excluded because it is irrelevant in light of the claim limitations and prosecution history. (D.I. 341-7 at 2). The partitioning analysis, according to Watson, does not address whether Watson's ANDA Products comprise a combination of low average molecular weight polyethylene oxide ("PEO") and high average molecular weight PEO, as required by the '150 patent. (D.I. 341-7 at 4). Plaintiffs respond that Dr. Yau's testimony is eminently relevant because it "will show that although Watson's ANDA Product is made from one commercial grade of [PEO], that grade contains a combination of 'low molecular weight [PEO] . . .' and 'higher molecular weight [PEO] . . .' as recited in claim 1 of the '150 Patent."

(D.I. 341-9 at 2). Watson's motion raises questions appropriate for the trier of fact and it is therefore denied.

Entered this 26 day of October, 2015.

*Richard G. Andrews*
United States District Judge