```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                          - - -

 4

      RECKITT BENCKISER          :   CIVIL ACTION
 5    PHARMACEUTICALS INC., RB   :
      PHARMACEUTICALS LIMITED,   :
 6    and MONSOL RX, LLC,        :
                                 :
 7              Plaintiffs,      :
                                 :
 8      vs.                      :
                                 :
 9    TEVA PHARMACEUTICALS       :
      USA, INC.,                 :
10                               :
                Defendant.       :   NO. 14-1451 (RGA)
11

12                          - - -

13                      Wilmington, Delaware
                        Thursday, October 29, 2015
14                      2:00 o'clock, p.m.

15                          - - -

16    BEFORE:  HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

17                          - - -

18

19

20

21

22                      Valerie J. Gunning
23                      Official Court Reporter

24
```

1    APPEARANCES:

2

3          WOMBLE CARLYLE SANDRIDGE & RICE, LLP
           BY:  MARY W. BOURKE, ESQ.
4

5                   -and-

6

7          TROUTMAN SANDERS LLP
           BY:  DANIEL A. LADOW, ESQ.,
                JAMES M. BOLLINGER, ESQ. and
8               TIMOTHY P. HEATON, ESQ.
                (New York, New York)
9

10              Counsel for Platintiffs
                Reckitt Benckiser Pharmaceuticals, Inc.
11              and R&B Pharmaceuticals Limited

12

13

           STEPTOE & JOHNSON LLP
14         BY:  JAMES F. HIBEY, ESQ.
                (Washington, D.C.)
15

16              Counsel for Plaintiff
                MonoSol Rx, LLC
17

18

19         RICHARDS, LAYTON & FINGER, P.A.
           BY:  STEVEN J. FINEMAN, ESQ.
20

21                  -and-

22

23

24

```
 1    APPEARANCES (Continued):

 2

               LATHAM & WATKINS LLP
 3             BY:   DANIEL G. BROWN, ESQ.
                     (New York, New York)

 4

 5                      -and-

 6

               LATHAM & WATKINS LLP
 7             BY:   JAMES K. LYNCH, ESQ.
                     (San Francisco, California)

 8

 9                      -and-

10

               LATHAM & WATKINS LLP
11             BY:   BRENDA L. DANEK, ESQ. and
                     EMILY C. WATSON, ESQ.
12                   (Chicago, Illinios)

13

14                      -and-

15             LATHAM & WATKINS LLP
               BY:   B. THOMAS WATSON, ESQ.
16                   (San Diego, California)

17

18                   Counsel for Defendants
                     Par Pharmaceutical, Inc. and Intelgenx
19                   Technologies Corp.

20

21

22

23

24
```

```
1    APPEARANCES (Continued):

2

3            PHILLIPS, GOLDMAN & SPENCE, P.A.
             BY:  MEGAN C. HANEY, ESQ. and
4                 DAVID A. BILSON, ESQ.

5                     -and-

6

7            WINSTON & STRAWN, LLP
             BY:  GEORGE C. LOMBARDI, ESQ.
8                 MICHAEL K. NUTTER, ESQ.
                  (Chicago, Illinois)

9

10                    -and-

11           WINSTON & STRAWN, LLP
             BY:  DAVID P. DALKE, ESQ. and
12                STEPHEN R. SMEREK, ESQ.
                  (Los Angeles, California)

13

14                    -and-

15

16           WINSTON & STRAWN, LLP
             BY:  MELINDA K. LACKEY, ESQ.
17                (Houston, Texas)

18           Counsel for Defendant
             Watson Laboratories

19

20               -   -   -

21

22

23

24
```

**P R O C E E D I N G S**

   (Proceedings commenced in the
courtroom, beginning at 2:00 p.m.)


            THE COURT:  All right.  Please be
   seated.
            This is the pretrial conference in
   Reckitt Bensicker versus Watson, No. 13-1674.
            I have a list of the attorneys who
   are here, so I guess we ought to put it on the
   record.
            Ms. Bourke?
            MR. BOURKE:  Good afternoon, your
   Honor.  Mary Bourke on behalf of Reckitt, and
   MonoSol and with me I have Dan Ladow, Tim Heaton
   from the Troutman firm, and right behind them is
   Jim Hibey, Mr. Hibey on behalf of MonoSol.  And
   throughout the trial, he will be speaking on
   behalf of MonoSol as well as Reckitt.
            THE COURT:  Okay.  Thank you.
            And for I guess, Mr. Fineman, I
   know you represent Par because you always
   represent Par.

```
 1                    MR. FINEMAN:  Good afternoon, your

 2      Honor.  Steve Fineman, Richards, Layton &

 3      Finger, on behalf of Par and Intelegenx.

 4                    Sitting at counsel table with me,

 5      your Honor, I believe you'll recall Dan Brown

 6      from Latham & Watkins.

 7                    I'd like to introduce Mr. Brown's

 8      colleagues.  Your Honor may recall Jim Lynch

 9      from Latham & Watkins, Emily Melvin, Brenda

10      Danek and Thomas Watson, all from Latham &

11      Watson.

12                    THE COURT:  All right.  Nice to

13      see all of you.

14                    And Ms. Haney?

15                    MS. HANEY:  Good afternoon, your

16      Honor.  Megan Haney on behalf of Watson, and

17      with me today are George Lombardi from Winston &

18      Strawn.

19                    MR. LOMBARDI:  Good afternoon,

20      your Honor.

21                    MS. HANEY:  Mike Nutter.

22                    MR. NUTTER:  Good afternoon.

23                    MS. HANEY:  Steve Smerek.

24                    MR. SMEREK:  Good afternoon, your
```

```
 1    Honor.
 2                    MS. HANEY:  And David Dalke.
 3                    MR. DALKE:  Good afternoon, your
 4    Honor.
 5                    MS. HANEY:  And Melinda Lackey.
 6                    MS. LACKEY:  Good afternoon.
 7                    THE COURT:  All right.  Well, good
 8    afternoon to all of you.
 9                    So I only have a couple things
10    here.  And I guess the first thing is, I know
11    you've been talking with my staff about the
12    scheduling, and I was just wondering if you
13    worked out what it is exactly you wanted to do.
14                    MR. LADOW:  Good afternoon, your
15    Honor.
16                    So my understanding is, is that we
17    thank you very much for the Court's indulgence
18    with our witness who had a death in the family.
19                    THE COURT:  No problem.
20                    MR. LADOW:  Thank you.
21                    So we had December 17th scheduled
22    for the Par infringement trial, that the 18th
23    would be the, if you will, the carryover of
24    what's not going to be put on next week that
```

1    relates to that witness and the opposing

2    experts.  So that would be the 18th.  I mean,

3    whether there's some other way to configure

4    those days, it's not something we talked about

5    or really thought about at this point, but the

6    18th was available, and so that's what we are

7    planning.

8                  And then in terms of this coming

9    week -- so what that, what that means

10   practically is that the issues of infringement

11   and validity relating to the '832 patent and

12   infringement of the '514 patent, that's what's

13   getting moved into December.  And all of the

14   other issues are going to be addressed next

15   week.

16                  And then there was a discussion

17   about really what, if the Court had a preference

18   in terms of how the days are structured next

19   week, whether we start on Monday in midday or

20   whether we just go Tuesday, Wednesday.

21                  THE COURT:  Well, so the part that

22   you are carrying over to the 18th, are you, for

23   lack of a better word, confident that one day is

24   enough for what you are carrying over?

```
 1                    MR. LADOW:  We believe it is, your
 2    Honor.
 3                    THE COURT:  Okay.  All right.
 4                    MR. LOMBARDI:  Your Honor, just to
 5    clarify that, but my understanding is maybe,
 6    correct me if I'm wrong, but I believe that
 7    there's down the 16th, right, and then the 17th
 8    was a carry over day?
 9                    MR. LADOW:  No.
10                    MR. LOMBARDI:  All right.  I think
11    it's going to take the 17th and the 18th,
12    because we need to put on half of our case at
13    that time.  So I think we're going to need the
14    17th and the 18th.
15                    THE COURT:  Well, no, no, no.  I
16    understood we're doing the 17th.  That's Par's
17    infringement day.
18                    MR. LOMBARDI:  I'm sorry.
19                    THE COURT:  And the 18th I carry
20    is the carryover from this trial.
21                    MR. LOMBARDI:  Yes.
22                    THE COURT:  And so really that was
23    my question, is, whatever is being carried over
24    was just because we are then coming, I think the
```

```
 1      18th is a Friday, so I was just -- and so I
 2      guess in a way, a different way to ask it is, so
 3      you have approximately at least two days worth
 4      of testimony or 14 hours worth of testimony that
 5      you expect to put on some, at the beginning of
 6      next week?
 7                    MR. LADOW:  That is right, your
 8      Honor.  And as far as the 17th and 18th is
 9      concerned, it could be that some of the 17th
10      involves some of the carryover issues, if that's
11      an efficient way to do it.  But we didn't really
12      talk about that.
13                    THE COURT:  All right.  Okay.
14                    And so, first off, the witnesses
15      who you're expecting to have testify, who would
16      have been testifying next week, but who will
17      now be testifying in December, what are their
18      names?
19                    MR. LADOW:  So the plaintiffs'
20      expert, who is not testifying next week, is
21      Martin Davies.
22                    THE COURT:  Okay.
23                    MR. LADOW:  And on the defendants'
24      side, they have an expert named Dr. McConville,
```

```
 1     who is testifying next week anyway even though

 2     he would also be testifying in December because

 3     he testifies about different patents for

 4     defendants.

 5                    And then there's an expert named

 6     Dr. Bley, B-l-e-y, who would be moved from next

 7     week into December.

 8                    THE COURT:  All right.  So

 9     basically there are three witnesses and one of

10     them, Dr. McConville, he's actually going to

11     testify some next week and some the following

12     week, because he is testifying -- his testimony

13     overlaps some of what Dr. Davies says, but some

14     other issues?

15                    MR. LADOW:  That's my

16     understanding, your Honor.

17                    THE COURT:  All right.  And so in

18     terms of next week, do the parties have a

19     preference from, I don't know, either

20     convenience of the witnesses or some other

21     reason as to, because right now as you can

22     probably guess, I don't really have anything

23     scheduled on Monday, Tuesday, Wednesday.

24                    Do the parties have a preference
```

```
 1    as to how they present what they are going to

 2    present next week?

 3              MR. LADOW:  Well, your Honor, we

 4    have at least one witness who is only available,

 5    an expert, on Wednesday, and so from plaintiffs'

 6    point of view, it really becomes a choice of,

 7    you know, starting on Monday and finishing at

 8    some point on Wednesday or just going Tuesday,

 9    Wednesday.

10              We thought that Tuesday, Wednesday

11    might be a more efficient use of the Court's

12    time, but I think all of the parties' counsel

13    wanted to do what the Court thought best suited

14    the Court.

15              THE COURT:  So the parties are

16    perfectly happy to just basically do it on

17    Tuesday and Wednesday?

18              MR. LOMBARDI:  Yes, we are, your

19    Honor.  And our only concern is just that we

20    have our seven hours, but however it works for

21    your Honor is fine with us.

22              THE COURT:  Okay.  And you're

23    perfectly happy with that?

24              MR. LADOW:  Yes, your Honor.
```

```
 1                    THE COURT:  Okay.  And I guess,

 2      Par, you have some part of this.  You're

 3      perfectly happy with that?

 4                    MR. BROWN:  We're perfectly happy

 5      with that.

 6                    THE COURT:  All right.  Why don't

 7      we just do it on Tuesday and Wednesday.  All

 8      right.

 9                    So it would be good to circle back

10      with my staff and just tell them, or actually, I

11      guess we've got -- we can do that.

12                    So it's Tuesday and Wednesday of

13      next week.  And Tuesday, be ready to go at 8:30.

14      Right?  Right.  Okay.

15                    So in the pretrial order, there

16      were are -- I tabbed a few pages.  There wasn't

17      a whole lot that was in dispute.

18                    There was this thing in paragraph

19      14 about wishing to discuss the proposal to

20      pre-admit certain exhibits.  And if this is

21      something the parties want to do, I'm fine with

22      it.  And the only thing that I guess I would ask

23      is that you work with my courtroom deputy to get

24      this, or get something filed as to what these
```

1       pre-admitted exhibits are.  And I guess with the

2       understanding that if no witness actually talks

3       about one of these pre-admitted exhibits, then

4       at the end of the case, we will take it off the

5       list, but if you admit more stuff than you need,

6       and there's no harm in that.

7                       So does that resolve that?

8                       MR. SMEREK:  Yes, your Honor.  I

9       think we had talked earlier about, and we're

10      still negotiating over those, so perhaps if you

11      could let us know when, if on sometime Monday we

12      would file that.

13                      THE COURT:  Monday would be fine.

14                      MR. SMEREK:  Okay.  Thank you.

15                      THE COURT:  I would say try to do

16      it by like Monday at 1:00 o'clock.

17                      MR. SMEREK:  We will endeavor to

18      meet that, your Honor.

19                      THE COURT:  Okay?

20                      MR. LADOW:  Your Honor, the one

21      caveat to that, I think if the document is

22      referencing a fact that either side admits, then

23      perhaps that could be dealt with differently.

24      In other words, that the document could still

```
 1        come in if it's referenced in a fact that both

 2        sides have agreed to.

 3                    THE COURT:  Well, if you've

 4        admitted some facts, why do we need to have

 5        extra pieces of paper?  Aren't the factual

 6        admissions good enough.

 7                    MR. LADOW:  Fair enough, your

 8        Honor.

 9                    If I could just mention a couple

10        things relating to the trial days again.

11                    THE COURT:  Okay.

12                    MR. LADOW:  Just very briefly.

13                    THE COURT:  Yes.  All right.

14        Sure.  Go ahead.

15                    MR. LADOW:  We had conferred with

16        defendants, and there are two doctor witnesses,

17        and we were going to just take them out of order

18        a bit.

19                    One, Dr. Wolschlager, was going to

20        testify first, so he would be the first witness

21        on Tuesday for plaintiffs.  And then there's a

22        Dr. O'Brian that I believe Wednesday morning,

23        that they wanted to go Wednesday morning, so it

24        may be a little out of order in terms of where
```

```
 1          secondary considerations would usually go.  But

 2          that was something we had talked about.

 3                      And then one other brief thing,

 4          your Honor, is something else that we conferred

 5          about is that both, all the parties were

 6          presuming that the substance of any opening on

 7          the issues that are being transferred to

 8          December could await December, and that we

 9          wouldn't do that on Tuesday in front of the

10          Court unless the Court wanted otherwise.

11                      THE COURT:  You know, part of the

12          beauty of you having a certain amount of time is

13          you can use the time as you choose, but from my

14          point of view, giving me an opening on Tuesday,

15          which, after all, is a promise that you are not

16          going to deliver on until December, is not a

17          very worthwhile use of your time.  But you

18          know how these patents and things relate

19          to each other.  I don't.  So use your own

20          judgment.

21                      But I will certainly say that if

22          part of what you want to do on December 18th, or

23          even at the ends of December 17th, whenever we

24          finish with the Par case, is give an opening,
```

1    you'll be permitted to do that.

2              MR. Ladow:  Thank you, your Honor.

3              THE COURT:  Okay?  It works for

4    everybody?

5              MR. LOMBARDI:  That works, your

6    Honor.

7              THE COURT:  Okay.  Anything else,

8    Mr. Ladow?

9              MR. LADOW:  Just I guess

10   miscellaneous.

11             Another thing that we had talked

12   about, it may be some exhibits, whether it's the

13   certain formula information in a proposed

14   product, a certain internal plaintiff

15   information that we may want not to publish for

16   confidentiality purposes, and the parties are

17   going to confer about that and try to bring it

18   up to the Court before trial.

19             THE COURT:  All right.  So to the

20   extent we are talking about documents and things

21   there, what I prefer is, you know, take it off

22   the big screen.  I've got a little screen here.

23   You know, I don't like to close the courtroom.

24             If there's something where the testimony

```
 1      is something, you know, and you can't work it

 2      out, and obviously it's important or you would

 3      not be doing it, you know, then, yes, try to

 4      bring it up.  But I certainly resist very

 5      strongly closing the courtroom.  But I have no

 6      problem with not letting the people in the

 7      audience see some of the exhibits if they're

 8      that confidential.

 9                      MR. LADOW:  Thank you, your Honor.

10                      THE COURT:  Okay?  All right.

11                      If there's nothing else on

12      Mr. Ladow's list, there was, on pages 4 and 5,

13      paragraph 20 started with parties' proposals,

14      and then continued on over into page 5.

15                      I didn't see that the parties'

16      proposals actually had any disputes, so I'm

17      perfectly happy that the parties can agree to

18      whatever they want to agree to.  Am I missing

19      something here?

20                      MR. SMEREK:  No, your Honor.

21                      THE COURT:  Okay.  All right.

22                      All right.  So there was a little

23      minor dispute on page 7, which is in paragraphs

24      28, 29 and 30.  And I'm not really sure if
```

```
 1      there's something, particularly in paragraphs 28

 2      and 30.  Is there -- is there a dispute here

 3      that you want me to resolve?

 4                  MR. LADOW:  Not right now, your

 5      Honor.  The parties are further conferring about

 6      the deposition designation issue.  In

 7      particular, defendants' designations.

 8                  MR. SMEREK:  That's right, your

 9      Honor.  There's nothing for your Honor right

10      now.

11                  MR. BROWN:  Correct.

12                  THE COURT:  All right.  Well,

13      thank you.

14                  All right.  So that concludes what

15      I had in the body of the pretrial order.  And I

16      think the only other thing that I have left that

17      I know about is the issue of the doctrine of

18      equivalents with Dr. McConville, I think.

19                  Is there anything else that the

20      parties have?

21                  MR. LADOW:  That's all in the

22      pretrial order, your Honor.

23                  MR. NUTTER:  Nothing at this time,

24      your Honor.
```

```
 1                    THE COURT:  Okay.  So let's just
 2      talk about the doctrine of equivalents.
 3                    So I got the letters that you
 4      wrote to me in response to my oral order.  Thank
 5      you for that.  I think I have a picture of what
 6      happened here.
 7                    One of the things I was interested
 8      in was, Dr. McConville has his three footnotes.
 9      Had plaintiff done some infringement contentions
10      at some earlier point in time that said doctrine
11      of equivalents on the --
12                    MR. NUTTER:  Your Honor, Dr.
13      Mathias, plaintiffs' expert witness, Dr. Mathias
14      is the subject of a DOE motion.
15                    THE COURT:  Okay.  McConville is
16      your guy?
17                    MR. NUTTER:  That's correct, your
18      Honor.
19                    THE COURT:  Hold on a minute.
20      Okay.  And was your -- McConville, he was
21      responding to Mathias?
22                    MR. NUTTER:  That's correct, your
23      Honor.
24                    THE COURT:  All right.  Sorry for
```

1     messing up the record here.  Like I said, I

2     think I have the general outlines, but there may

3     be a few details I have backwards.

4             So Dr. Mathias -- well, in any

5     event, in terms of infringement contentions, did

6     plaintiff do infringement contentions saying

7     doctrine of equivalents on the thing that Dr.

8     Mathias put in his footnotes?

9             MR. BOLLINGER:  Good afternoon,

10    your Honor.  Jim Bollinger here for plaintiffs.

11        And I think the doctrine of equivalents

12    was raised in the initial infringement

13    contentions, but not with much detail.  I've

14    think there were some additional details

15    presented in the opening report and more details

16    after that.

17            THE COURT:  What details were

18    presented in the opening report?

19            MR. BOLLINGER:  Well, there were

20    two.  It laid out kind of the framework of the

21    doctrine of equivalents and how it applied to

22    the particular facts.

23            If you remember, the ranges that

24    the analysis provided were right at the

```
 1         threshold, right at the range limits for the two

 2         ratchets of polyethylene oxide, and in that

 3         instance, there was a literal infringement claim

 4         presented, there was a discussion about the

 5         factual --

 6                     THE COURT:  And let me just

 7         interrupted you for a second.

 8                     MR. BOLLINGER:  Sure.

 9                     THE COURT:  Is your literal

10         infringement claim a strong claim?

11                     MR. BOLLINGER:  Yes.

12                     THE COURT:  All right.  Go ahead.

13                     MR. BOLLINGER:  But it's also

14         supplemented in theory in a lot of ways by the

15         doctrine of equivalents here, because these --

16                     THE COURT:  Well, go back to,

17         because I looked at the opening report, and it

18         seemed to me that your entire doctrine of

19         equivalents argument consisted of one sentence

20         that is the most conclusory possible statement

21         of the law that appears in three different

22         footnotes.  Sorry.  There you are.

23                     MR. BOLLINGER:  I'm sorry.  I

24         moved up.
```

```
1                    THE COURT:  That's all right.  Am

2      I missing something?

3                    MR. BOLLINGER:  We tried to in our

4      presentation and response identify some of the

5      factual predicate that was laid out.  You

6      remember he's an expert witness.  He's talking

7      about his understanding of the facts.

8                    The Court had invited a discussion

9      about stray molecules at the high molecular

10     weight level, and so he had this discussion

11     about how they have a significant contribution

12     to the properties, and that is where this debate

13     is, is when you're at this threshold of the high

14     molecular weight fraction, which is where this

15     whole dispute is, you're talking about a

16     contribution that is indistinguishable from when

17     it's right at the level or what he calculated to

18     be about .2 percent over the level.

19                    THE COURT:  In his opening expert

20     report --

21                    MR. BOLLINGER:  Right.

22                    THE COURT:  -- does this argument

23     appear?

24                    MR. BOLLINGER:  It's the technical
```

```
 1      details of the argument are presented, and then

 2      he says, if it's not literal infringement, then

 3      it's infringement under the doctrine of

 4      equivalents, because there's no, there's no --

 5      there's an insubstantial difference between

 6      molecules at this very, very small range

 7      difference from what the literal claim required,

 8      if that data was taken.

 9                  And so it is our position that

10      they were on notice and given plenty of

11      opportunity to either respond, develop counter

12      evidence if think wished to do so, but they had

13      at least an appreciation of what the theory was

14      predicated on.

15                  THE COURT:  Hold on just a minute.

16                  (Pause.)

17                  THE COURT:  All right.  What else

18      do you have to say?

19                  MR. BOLLINGER:  Twofold, your

20      Honor.  The first is that, like you say, it laid

21      a very sparse presentation of the doctrine of

22      equivalents, but it tied it to the specific

23      limitation, to the actual numbers that were

24      involved in that limitation.  And, you're right,
```

1          it's footnote, I think, 6 of page 15.

2                    THE COURT:   Footnote 4.

3                    MR. BOLLINGER:   In his opening

4     report.

5                    THE COURT:   Five and 6.

6                    MR. BOLLINGER:   Yes.

7                    THE COURT:   Four is on page 12.

8     But it's the same footnote.

9                    MR. BOLLINGER:   Yes.   And so

10    presents it, they come back -- and, again,

11    remember, when we were initially presenting

12    infringement theories on this, it was, they

13    would come in one bottle, two bottles.   You have

14    to have two bottles.   We're saying, no, it can

15    all be in one.   So that's, we think, what the

16    fight is about.

17                    We present this in case they're

18    going to argue about the edge, because these

19    things are right at the threshold of the two

20    ranges that the claim specifies.   We think it's

21    literal infringement.   But to the extent there's

22    an argument that it's not, we think that it's

23    insubstantial difference from literal

24    infringement.

```
 1                    THE COURT:  No.  I understand
 2       that's what you think.  I mean, you agree, don't
 3       you, that you had a duty to make the doctrine of
 4       equivalents argument in your opening expert
 5       report.  Right?
 6                    MR. BOLLINGER:  Yes.  We do
 7       identify what the argument was and the
 8       foundation of that argument, and we presented
 9       the framework.
10                    They came back.  We didn't know if
11       that's where they wanted, they were going to
12       debate that.  I think, you know, these are
13       ranges, and there's a lot of law on ranges being
14       very close to the threshold of the claim
15       language, never amended, no Festo issues,
16       nothing like that.
17                    THE COURT:  Right.  But when you
18       say you didn't know whether they take issue with
19       it, that does not excuse you from doing what you
20       need to do in the opening report.  Right?
21                    MR. BOLLINGER:  No, you are right.
22       We were -- but we also, I think, because of the
23       way the case unfolded, presented enough
24       information to the extent that they were going
```

1    to need to counter it with evidence or testing

2    or any other counter position, they were well

3    armed to start that.  They chose not to.

4              They basically said, you didn't

5    tell us enough, so we're not going to respond at

6    all.  And then we said, well, okay.  Here, here

7    are some additional details.  And we didn't do

8    any more testing.  We have the same test results

9    we gave them before.

10              And we just said, when you look at

11    these test results closely and make these

12    analyses, you can see how clear the doctrine of

13    equivalents is if there's no literal

14    infringement.

15              And, again, it's a, it's the

16    fall-back.  And so in a sense, it presented it

17    in a way that if they really wanted to at this

18    point, say, well, wait a minute, we still don't

19    believe this is -- that this is doctrine of

20    equivalents in the classic sense.

21              They had plenty of time to do

22    whatever they needed to.  As a matter of fact,

23    they submitted a supplemental report on one of

24    the, on one --

```
 1                    THE COURT:  That was on something

 2       else.

 3                    MR. BOLLINGER:  Now they are

 4       armed.  They have to come back and they tell us

 5       why they are not infringing on that dosage

 6       level.  They know everything about our theory of

 7       infringement, including on that dosage level.

 8       So when say it's something else, it certainly

 9       wasn't DOE, but it certainly was on that one,

10       they're obligated to do it.

11                    And as to the opportunities to

12       present it, they had Dr. Mathias' deposition,

13       you know, several weeks later.  Could have asked

14       him any question they wanted to and chose not to

15       ask him --

16                    THE COURT:  Wasn't it one week

17       later?

18                    MR. BOLLINGER:  One week, you are

19       right.  One week.

20                    And there was -- but Dr.

21       McConville's testimony was many weeks later, and

22       they actually did a redirect on him and asked

23       him all sorts of, can you respond to this, can

24       you respond to that, and which was fine.  We let
```

```
 1        it all come in.  But they chose not to ask him

 2        about could he respond to the reply report of

 3        Dr. Mathias because I think they knew they

 4        wanted to bring this motion.

 5                     And so I think that's our

 6        position.  We don't think there's any prejudice,

 7        and we certainly don't think that we -- I don't

 8        think we violated any rules.

 9                     THE COURT:  Okay.  All right.

10        Thank you.

11                     Who wants to speak about this

12        on --

13                     MR. SMEREK:  Thank you, your

14        Honor.  Steven Smerek for defendants, Actavis,

15        Watson.

16                     I think your Honor has the issue

17        exactly correct.  The original opening report

18        had a single sentence.  It was the most

19        conclusory of sentences reciting the DOE

20        standard.  It was repeated in three footnotes.

21        Not even in the body of the report, but in

22        footnotes.

23                     With respect to the infringement

24        contentions, the same level of detail was
```

1      provided in infringement contentions.  There

2      were none of the later arguments and the later

3      analyses that have attempted to be introduced in

4      the case or earlier disclosed.

5                  And so this is not a case where

6      we're supposed to have to guess with respect to

7      what analyses or what has been done.  And, in

8      fact, here, as was admitted, there were no

9      further tests, there was no further testing.

10     And what they presented was more analyses.  They

11     presented in rebuttal the analyses that they're

12     required by the Federal Rules to present in the

13     opening report, and that did cause prejudice

14     because, as your Honor just indicated, we had

15     very condensed expert schedules with an exchange

16     of many, many experts in this case, and all of

17     those depositions of all of those experts, with

18     literally thousands of pages of expert reports,

19     had to be conducted in a period that was a

20     little bit over four weeks.

21                 And so in that condensed case, we

22     are absolutely allowed to rely upon the expert

23     opinions that are disclosed in the opening

24     report, and this opinion wasn't, and we believe

1      it should be excluded.

2             THE COURT:  And Dr. McConville, he

3      would be your expert on this topic if this topic

4      were in the case.  Right?

5             MR. SMEREK:  That is correct.  He

6      is our noninfringement expert.

7             THE COURT:  Do you have anything

8      else to say?

9             MR. SMEREK:  I do not, your Honor,

10     unless you have any questions.

11            THE COURT:  No, I don't think that

12     I do, so thank you.

13            MR. SMEREK:  Thank you, your

14     Honor.

15            THE COURT:  And you are Mr. --

16     actually, who are you?

17            MR. BOLLINGER:  Gym Bollinger.

18            THE COURT:  Okay.  Your name is

19     not on the list.

20            MR. BOLLINGER:  Yes.  I'm sorry

21     about that.

22            THE COURT:  No.  That's all right.

23            MS. BOURKE:  Your Honor, that's

24     probably my fault.  I elected to put some of the

```
 1     name --
 2                   THE COURT:  You don't need to fall
 3     on your sword here.  It's all right.  It's okay.
 4                   I was just all of a sudden
 5     realizing that you were not Mr. Hibey, and I
 6     couldn't figure out who you were.  So, okay.
 7     That's all right.
 8                   (Pause.)
 9                   THE COURT:  You know, one of the
10     things that's difficult about this issue is I
11     have no way of evaluating defendants' conduct,
12     and by that I mean I don't know, and there's no
13     reason why I should know, I think, whether, sort
14     of what the range of thinking of the defendants
15     are in terms of whether they looked at the
16     footnotes and said, that is not an expert
17     report, and therefore suggested to Dr.
18     McConville that he point that out and move on.
19     And then it would also be consistent to not
20     depose Dr. Mathias on that and basically to
21     stand their ground, or whether, you know, they
22     said, Dr. McConville, what do you think about
23     doctrine of equivalents, and his response was,
24     there's no defense to that.  And so therefore,
```

1    you know, they said, well, what's the next best

2    choice?

3                    And if we weren't having the trial

4    next week, I might be inclined to do what the

5    Delaware lawyers have probably seen me do on a

6    few occasions, which is try to get a decision on

7    the merits by allowing Dr. McConville to write a

8    report or to do something else, but I don't

9    think that is actually a realistic option given

10   that the trial is next tweak, and given that the

11   parties are always doing, you know, a hundred

12   different things getting ready for the trial

13   next week.

14                   So I have that in the back of my

15   mind, that sometimes when I see these things, I

16   think the reason why the issue has come up is

17   kind of gamesmanship by the defendants and, you

18   know, I sort of think there's a way to resolve

19   it.  But here, you know, I don't have that

20   option, I don't think, and so I'm left with a

21   situation where either I exclude the plaintiffs'

22   doctrine of equivalents testimony, and, you

23   know, there could be a cost to the plaintiffs in

24   that, or I let it in with no meaningful

1    opposition, which is hardly a decision on the

2    merits either.

3              And so what I think I'm going to

4    do is, I'm going to exclude it because I don't

5    think the disclosure in the opening expert

6    report was a fair disclosure in compliance with

7    the rules, and I think that's kind of

8    highlighted by the fact when the defendants

9    said, you told us nothing, then we get another

10   six or seven paragraphs of explanation.

11             And so I think it is in violation

12   of the rules.  I can't say, I don't have any

13   information as to understand why an expert would

14   put an infringement argument in a footnote,

15   assuming that it even was a fulsome infringement

16   argument.  You know, people who use footnotes

17   are lawyers, not experts.  But, in any event,

18   it's there, but I don't think it actually comes

19   close to complying with the rules, and I don't

20   think there is at this stage in the case any

21   ability of the defendants not to be prejudiced

22   by the argument.

23             And I also take note that

24   Mr. Bollinger said that the literal infringement

```
 1     argument is strong, so I don't think there's a
 2     whole lot of cost to the plaintiffs of excluding
 3     it.  And so I tended to think about this in the
 4     manner called for by Myers versus Pennypack
 5     Woods Homeownership Association, 559 F.2d, 894,
 6     Third Circuit, 1977.
 7                    So I'm going to exclude, or
 8     essentially grant the motion in limine on
 9     this and exclude the doctrine of equivalents
10     opinion.
11                    Is there anything further on this
12     topic, Mr. Bollinger?
13                    MR. BOLLINGER:  No.  I don't have
14     anything further to add, your Honor.
15                    THE COURT:  All right.  Is there
16     anything further on this topic from the
17     defendants?
18                    MR. SMEREK:  No, your Honor.
19     Thank you.
20                    THE COURT:  All right.  All right.
21     Having said that, is there anything --
22                    MR. BOLLINGER:  Your Honor, can I
23     just add one thing?
24                    THE COURT:  Sure.  Go ahead.
```

```
 1              MR. BOLLINGER:  I do believe we

 2    have a strong infringement case, but I think

 3    part of that was my belief that this is

 4    infringing because they're practicing our

 5    invention, which in a large way is literally

 6    infringing, but also part of the story was that

 7    it's an insubstantial change they are trying to

 8    make.

 9              So I think that to the extent the

10    Court was saying we have a really strong case on

11    infringement, think that's true and therefore

12    there's no prejudice to us, I don't think

13    that's -- that's not accurate.

14              THE COURT:  And I'm not sure

15    exactly what I just said.  I meant to say

16    because I think that's what you said, you have a

17    strong literal infringement case.

18              MR. BOLLINGER:  It's --

19              THE COURT:  So could it be the

20    case that just because you think you have a

21    strong case, I might disagree?  Yes, that could

22    happen.  I have no idea.  But I also have

23    nothing to base contrary conclusion on.  I only

24    know for sure what I think after we actually
```

```
 1      have the trial.  Right?
 2                  MR. BOLLINGER:  Well, I agree with
 3      that, your Honor, and I have to say that if
 4      you're worried about them being prejudiced, or
 5      worried about the strength and trying to make a
 6      decision based on the strength of the literal
 7      infringement case versus what we're presenting
 8      as doctrine of equivalents, the safer balance
 9      approach would be to allow the evidence in.
10      It's not much more testimony.  It comes against
11      our clock, which is obviously important.
12                  Dr. McConville is coming back in
13      five weeks, I guess.  If he needs time to
14      develop additional positions -- he hasn't done
15      any testing on the case no matter what, and as I
16      said before, the issue of these range
17      limitations on literal and doctrine of
18      equivalents are -- they're so intertwined, I
19      mean, it's just argument at that point and
20      opinion.  There's no -- the data is in.  There's
21      only one set of data, and everyone is looking at
22      it and saying, this is what I think.  The other
23      guy is saying, no.  This is what I think.
24                  It's not -- there is no prejudice
```

```
 1        here for them, and if there was and they said we

 2        need more time, we needed more than a week to

 3        prepare the cross of Dr. Mathias on this, or if

 4        we needed more to prepare for Dr. McConville to

 5        testify, do it later.  I guess, then, yes, then

 6        do it in December.

 7                    I didn't mean to -- I apologize.

 8                    THE COURT:  No, no, no, no, no.

 9                    MR. BOLLINGER:  I was thinking you

10        were going on a point that I wasn't sure, I

11        didn't want the Court to be misled by something

12        that I said.

13                    THE COURT:  All right.  Thank you.

14                    Mr. Ladow, are you not satisfied

15        with Mr. Bollinger's argument?

16                    MR. LADOW:  Well, maybe it's the

17        same thing, your Honor.  I just want to say

18        that, maybe it's not that binary choice because

19        we have the trial in December, so they could

20        have an opportunity to take that potential

21        option that you also mentioned about a report

22        and a deposition, et cetera, because of the fact

23        that some of this is getting moved, so I just

24        wanted to mention that.
```

```
 1              THE COURT:  Well, except that the

 2    part that was getting moved was not this part.

 3    The part that was getting moved, as I understood

 4    it, was Dr. McConville replying to Dr. Davies,

 5    which is obviously not this part.  But the

 6    Mathias versus McConville dispute, that's for

 7    next week.

 8              MR. LADOW:  At least in part,

 9    that's certainly correct.  What I'm referring to

10    is the fact that it is the case that in the --

11    there's an overlap between the Watson and the

12    Par infringement cases on this issue because

13    it's the same, I'm not sure what's public, but

14    there's the same bottle, if you will, that is

15    being used.

16              THE COURT:  Okay.  I understand

17    what you are talking about.

18              MR. LADOW:  And so Dr. McConville

19    and Dr. Mathias would be testifying on

20    December 17th in regard to these same issues in

21    the Par context in any event, so I just wanted

22    to raise this as a potential other option.

23              MR. SMEREK:  Your Honor, I don't

24    know if you want to hear any more on this.  If
```

1    you're inclined to change your mind, I would

2    like to be heard.

3              THE COURT:  Why don't we do this.

4    I gave Mr. Bollinger, now Mr. Ladow a chance to

5    be heard.

6              You know, it's good to have a

7    record even if I don't change my mind, so why

8    don't you tell me what you would like to make

9    sure that I hear and is in the record.

10             MR. SMEREK:  Thank you, your

11   Honor.  I think two principle things.  The first

12   one, which goes to the setup for this prejudice

13   and defendants' conduct versus plaintiffs'

14   conduct.

15             Plaintiffs are the master of their

16   expert reports and plaintiffs are the master of

17   their invalidity, their infringement

18   contentions.  And in their infringement

19   contentions, they don't set out the detail.  You

20   have not heard that.  They set out the same

21   throwaway sentence that was then incorporated in

22   a footnote in their opening report.  There

23   wasn't a separate section on the doctrine of

24   equivalents.  There wasn't an expert opinion

1    offered on the doctrine of equivalents.  I

2    think, at best, there was a conclusion in a

3    footnote, as your Honor said, which would be

4    expected from an attorney in a legal brief.

5            So the conduct that put us in this

6    position was plaintiffs' failure to meet the

7    rules.  And if they are allowed, if plaintiffs

8    generally are allowed to provide supplemental

9    reports later on down the road, they can try to

10    get away with this type of conduct in every

11    situation.  What they will learn from that type

12    of, from that type of ruling is as long as they

13    put the footnote in, they'll preserve the

14    argument for later.  And if they get called on

15    at this time, then they can try to get that in

16    through rebuttal and other reports.

17            The fact of the matter is, this

18    was nothing more than their failure that put us

19    in this position, and now here we are.  We're on

20    the eve of trial next week, and your Honor is

21    exactly right.  Next week, the '150 case against

22    Watson/Actavis will be tried in its entirety.

23    No part of that case will be tried after next

24    week.

```
 1                    THE COURT:  You mean the

 2      infringement case?

 3                    MR. SMEREK:  Infringement case.

 4      Excuse me.  Dr. McConville and Dr. Mathias and

 5      all of the testimony with respect to the

 6      validity or invalidity of the '150 patent and

 7      all of the testimony with respect to the

 8      Watson/Actavis infringement of the '150 patent

 9      will be tried next week.  So it is not the case

10      that any of those issues are coming back.

11                    And so we agreed to -- and we

12      weren't coming back at all after this week.  We

13      agreed to that in order to accommodate

14      plaintiffs' schedule.  It is simply not the case

15      now that there would, that you can rectify the

16      prejudice that your Honor relied upon in

17      reaching the decision that this would properly

18      be excluded in this case.  And so we would

19      strongly object to anything that would require

20      something different and it would be prejudicial.

21                    THE COURT:  All right.  Thank you,

22      Mr. Smerek.

23                    THE COURT:  Well, I appreciate

24      what Mr. Bollinger and Mr. Ladow have said.
```

1          One of the things that Mr. Smerek

2      just said, he may have said better than I said

3      was, you know, this trial is next week, it is

4      not in December.

5          It may be that as a matter of the

6      parties working together to deal with an

7      unanticipated, unpredictable scheduling issue,

8      they work as cooperative attorneys should and

9      come up with a way to solve that problem.  But I

10     don't think that really has any applicability to

11     this problem, so I am not going to change my

12     mind on this.

13         As I tried to say, you know, it is

14     not an open and shut kind of thing when these

15     sorts of issues come up.

16         But I do think that plaintiffs

17     made a deliberate choice not to front-load the

18     doctrine of equivalents argument.  And I think

19     it has worked a prejudice that can't be overcome

20     into the schedule.  So that is where we are.

21         Is there anything else for next

22     week, Mr. Ladow?

23         MR. LADOW:  I don't believe so,

24     your Honor.

```
1               THE COURT:  Defendants, do you

2    have anything?

3               MR. LOMBARDI:  No, your Honor.

4               THE COURT:  All right.  Just

5    remember to allow plenty of time to get through

6    the line Tuesday morning.

7               I take it you will still be

8    setting up the courtroom tomorrow and your

9    technical people.

10              If there is nothing else, thank

11   you for coming.

12              (Hearing concluded.)

13                   -   -   -

14

15

16

17

18

19

20

21

22

23

24
```